J. A. Seabolt, R. K. Kline, C. P. Smith, W. H. Cool, Frank B. Rine, B. S. Hummel, Daniel H. Riegel, Benjamin Rine, Harvey Wenzel, Charles A. Frey, Edward Hummel, J. B. Morrow and Joseph M. Waters, Appellants, *v.* The Commissioners of Northumberland County.

*Constitutional law—Local and special legislation—Legislative authority —Classification—Province of legislature and courts.*

Legislation is not necessarily unconstitutional because it is special or local. On the contrary, legislative authority inherently includes power to pass laws for special or local needs.

Legislation for a class distinguished from a general subject is not special, but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is not wisdom, but good faith in the classification.

*Constitutional law—Classification—Local and special legislation—Bridges —Act of May 6, 1897.*

The legislature may, for the purpose of authorizing counties to rebuild bridges, make a separate class of such as are over a river or stream forming the boundary lines between counties; or of such as have been destroyed by ice, flood or otherwise, or abandoned by the owner and rebuilt on another site; but such as are on the line of a public highway, or deemed necessary for the use of the traveling public, or are owned and maintained by corporations or private persons, or built by public subscriptions, or used exclusively for vehicles and foot purposes, can hardly be called distinctions.

The Act of May 6, 1897, P. L. 46, is not local or special legislation within the meaning of article 3, section 7, of the constitution of Pennsylvania which provides that "the general assembly shall not pass any local or special law . . . . relating to ferries or bridges."

*Constitutional law—Title of statute—Bridges—Act of May 6, 1897.*

The Act of May 6, 1897, P. L. 46, entitled "An act authorizing county commissioners . . . . to rebuild bridges on sites owned by corporations or private persons . . . . and providing for the cost of reconstructing the same," does not violate article 3, section 3 of the constitution of Pennsylvania; for insufficiency of title.

*Bridges—Mandamus—Question of fact—Act of May 6, 1897.*

On a petition for a mandamus to compel county commissioners to rebuild

a bridge over a stream between two counties a mandamus cannot be awarded where the commissioners in their answer deny that the bridge destroyed had been abandoned and aver that it had been rebuilt upon the original site, and where, in fact, it appears that the new bridge was built north of the site of the old bridge 196 feet at one end, and 444 feet at the other end, until the fact be determined whether or not a new site was used; and this may depend largely on the physical features of the neighborhood, or on changes in the location of population and travel.

*Query*, whether the Act of May 6, 1897, P. L. 46, is mandatory on both the commissioners and the court at the option of the ten citizens who file the petition.

*It seems* that if the Act of May 6, 1897, P. L. 46, relating to the rebuilding of bridges over streams separating two counties, confers a discretion upon the courts to order the rebuilding of a bridge, the courts of both counties must concur before either can enforce a mandamus.

Argued May 25, 1898. Appeal, No. 169, Jan. T., 1898, by defendants, from order of C. P. Northumberland Co., Sept. T., 1897, No. 16, dismissing petition for mandamus. Before STER-RETT, C. J., GREEN, McCOLLUM, MITCHELL and FELL, JJ. Reversed.

Petition for mandamus.

The facts appear by the opinion of the court below, SAV-IDGE, P. J., which was as follows:

This is a rule for a mandamus on the commissioners of Northumberland county to require them to build, jointly with the commissioners of Union county, a bridge across the West Branch of the Susquehanna river at Lewisburg.

The river at this point forms the boundary line between the two counties, and the proceeding is under the Act of May 6, 1897, P. L. 46. The original bridge, maintained by the Lewisburg Bridge Company, was destroyed by the flood of 1865. It was rebuilt in 1868, and by authority of the legislature (see act of February 19, 1868), the location was slightly changed, the bridge company being empowered to rebuild at any place within one half mile of the location of the old bridge. In point of fact the new bridge was built north of the cite of the old bridge, 196 feet at one end and 444 feet at the other end. By the same act the bridge company was authorized to construct for railroad purposes as well as for travel by wagons and otherwise, and the bridge has ever since been used for such purposes.

All the property and franchises at the site of the old bridge were saved to it by the said act, and it still owns and occupies its toll house and other property at the Lewisburg shore end of the old bridge.

It is urged that the act of 1897 is unconstitutional, because special legislation. With this view we agree. A proper classification of bridges is not objectionable. It may be conceded that there would be no offense in making a class to include all bridges spanning county line streams and which are owned and maintained by corporations, etc., and which have been destroyed and abandoned, and to provide for their rebuilding in the manner prescribed. But the act goes much further. It operates upon certain bridges of this class to the exclusion of all others. They are to be bridges used exclusively for vehicles and foot purposes. A bridge having in addition to the carriage and footway, a street railway, a towing path or a steam road upon it, is left out. [Bridges which have been destroyed and not rebuilt are unprovided for. It is only where the same has been "rebuilt by said corporation or private persons, or by public subscriptions on another site," that the act takes hold. Where there has been a rebuilding of the old bridge a short distance further up or down the stream, a second structure must be built at the public expense. Where the bridge has been destroyed or abandoned and not rebuilt, the traveling public may swim.] [1] In the language of Mr. Justice PAXSON, in Commonwealth v. Patton, 88 Pa. 258: "This is classification run mad," and [the method in the madness was to provide for a free bridge over the West Branch of the Susquehanna at Lewisburg, by legislation that would not be applicable anywhere else in the commonwealth. It is not probable that there can be found elsewhere in the commonwealth a situation that would meet all the conditions of this extraordinary act of assembly.] [2] To provide for the reconstruction of a bridge already rebuilt to the exclusion of all cases where there has been no rebuilding is, it seems to us, a very peculiar kind of legislation. We cannot see any reason in it, nor do we think there is any, except as above intimated. It is certainly not general legislation: Commonwealth v. Patton, supra. There are numerous other authorities to which it is not necessary to refer.

The act provides in the fourth section for the taking of pri-

vate property, and the method of compensation. There is no reference to this in the title. In this we think it offends the constitution. The title must so express the purpose as to clearly and fully give notice to those who may be specially interested therein: Sewickley Boro. v. Sholes, 118 Pa. 169. It was claimed that inasmuch as there had been no abandonment of the bridge in question, the same having been rebuilt as directed by the act of 1868, this case did not come within the provisions of the act of 1897. It will be seen, however, by a close examination of that act that it was not an abandoned bridge that the legislature attempted to provide for. A rebuilt bridge cannot be said to have been abandoned. If constitutional, the act would be applicable to bridges which have been destroyed and rebuilt upon another site, or, in other words, to a change in location.

We have no doubt the public are poorly accommodated by the present bridge and that there is danger in crossing it with vehicles; that, however, is not the question here. We are dealing solely with the constitutionality of this act of assembly. If the public demands better accommodation than it now has, there are other methods of getting it. The act of 1897 does not provide the only means of securing free bridges.

[Being of the opinion that, for reasons given, the act in question is unconstitutional, we discharge the rule at the cost of the petitioners and note an exception and seal a bill for them.] [3]

*Errors assigned* were (1–3) portions of the opinion as above, quoting them; (4) in refusing the mandamus prayed for.

*Henry C. McCormick* and *W. W. Ryon*, with them *Seth T. McCormick, Lewis Dewart, Philip B. Linn* and *R. M. Cummings*, for appellants.—We start with the presumption that the statute is constitutional. Every intendment is in favor of its constitutionality: Pennsylvania R. R. v. Riblet, 66 Pa. 164; Speer v. School Directors, 50 Pa. 150.

Where it is proposed to show that an act is unconstitutional by proof, the burden of such proof is undoubtedly upon the person seeking to show the unconstitutionality of the act: R. R. Co. v. Casey, 26 Pa. 300.

The power of making a proper classification is vested in the

legislature : McCarthy v. Com., 110 Pa. 243 ; Van Riper v. Parsons, 40 N. J. L. 123 ; Ayars's App., 122 Pa. 281 ; Perkins v. Phila., 156 Pa. 554; Kilgore v. Magee, 85 Pa. 401.

The title gives sufficient notice of the purposes of the act: Allegheny County Home's Case, 77 Pa. 78; R. R. Co.'s App., 77 Pa. 429 ; Mauch Chunk v. McGee, 81 Pa. 433; Dewhurst v. Allegheny, 95 Pa. 437.

*C. B. Witmer*, for appellees.—The word " or" is frequently read " and " in the construction of statutes in order to render the whole operative and consistent: Murray v. Keyes, 35 Pa. 384.

The title does not give sufficient notice of its subject to reasonably lead persons to inquire into the body of the bill : Phoenixville Road, 109 Pa. 44 ; Com. v. Samuels, 163 Pa. 283 ; Sewickley Borough v. Sholes, 118 Pa. 169.

It is true that the presumption is in favor of the constitutionality of a statute, but this presumption must of necessity fall in the light of the test that constitutional provisions are to be so construed as to prevent the mischief designed to be remedied by their adoption : Ayars's App., 122 Pa. 266 ; York School District's App., 169 Pa. 70.

The act under consideration is special legislation in the guise of a general law, which has been pronounced the most specious and vicious form that special legislation can assume : Philadelphia v. Cemetery Co., 162 Pa. 107 ; Com. v. Patton, 88 Pa. 258; Scowden's App., 96 Pa. 422.

OPINION BY MR. JUSTICE MITCHELL, July 21, 1898 :

The learned judge below held that the act of 1897 was unconstitutional because it was special legislation, and because it contained a subject not clearly expressed in the title.

Legislation is not necessarily unconstitutional because it is special or local. On the contrary legislative authority inherently includes power to pass laws for special or local needs, and this principle is recognized in section 8 of article III. of the constitution which provides that " no local or special bill shall be passed unless notice of the intention to apply therefor shall have been published," etc. But by section 7 of the same article, local or special laws " regulating the affairs of counties," etc., or "relating to ferries or bridges," are, inter alia, expressly

prohibited.   The subject of the act of 1897 being a certain class of bridges falls within the prohibition, if the act is local or special.

Legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition.   If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis.   The test is, not wisdom, but good faith in the classification.

The bridges which are made into a separate class by the act of 1897, and authorized to be rebuilt must have been :

First, over a river or stream forming the boundary line between two counties ;

Second, on the line of a public highway or deemed necessary for the use of the traveling public ;

Third, owned and maintained by corporations or private persons, or built by public subscriptions ;

Fourth, used exclusively for vehicles and foot purposes ;

Fifth, destroyed by ice, flood, or otherwise, or abandoned by the owners and rebuilt (replaced) on another site.

These conditions are not so elaborate or special as they may seem at first sight, but the question is, are they a mere cloak for a special bridge by prescribing tests to which no other will conform.

The first condition is founded on a natural and manifest distinction, which is to a large extent unavoidably local.   Rivers or streams forming boundaries between counties are comparatively few in number, and their locality is fixed.   So also bridges over them are almost necessarily fixed as to location, by the centers of population and travel.   They form a distinct class, because not exclusively a bridge of either county, and there are matters of exact site, style, material, expense, etc., as to which the two counties may not be in harmony.   This basis of classification, therefore, is not only competent, but obviously proper.

The second and third conditions can hardly be called distinctions at all, for very few bridges can be excluded by them. Practically all bridges are built on the line of a public highway

or on a site deemed necessary to the traveling public. And as all bridges have owners, those only are excluded which are not owned by corporations or private persons, but already by the public. There is a very plain difference between authorizing county commissioners to take for the public what is now the property of others, and interfering with what is already public property.

The fourth condition, as to exclusive use for vehicles and foot passengers, is plainly meant to prevent interference with railroad bridges, and such classification is so obviously proper that it needs no comment.

In the fifth condition we probably have the real purpose and motive of the act. The county commissioners are authorized "to take charge of and rebuild and reconstruct" bridges destroyed by ice, flood or otherwise (as e. g. by fire) or bridges abandoned by their owners and rebuilt on another site. It is argued by appellees that the word " or " before abandoned should read " and," but we see no necessity for so doing. The intent of the act is quite plain. Where the public has had the use of a bridge at a certain place, and has been deprived of it, either by destruction or abandonment of the bridge, and the re-' building on a different site, the commissioners are authorized to restore the former public use, by taking the site of the destroyed or abandoned bridge and rebuilding or reconstructing thereon. The phrase "rebuilt . . . . on another site " is not strictly accurate, for a new bridge in a new place cannot strictly be said to be the old one rebuilt. But the meaning is clear, and " replaced by" or any equivalent phrase would express it correctly. Such a construction is no more strained than the substitution of " and " for " or." If the flood of 1865 had not destroyed the bridge of the Lewisburg Bridge Company, but had weakened it so as to be unsafe for travel, and the company had abandoned it and rebuilt, i. e., replaced it by a new one in a different location (as it was authorized to do by the act of 1868), the inconvenience contemplated by the act of 1897 would have been present and the remedy applicable.

There is nothing in these conditions that enables the Court to say as matter of legal inference that they may not concur as to other bridges either now or hereafter. Nor was any proof made to that effect as matter of fact in the court below. We are un-

able therefore to say that this act is special or local as to this bridge, within the prohibition of the constitution.

Nor must the act fail by reason of defective title. The title is somewhat long, and very fairly descriptive of the purpose and contents of the act. It is called an act "authorizing county commissioners . . . . to rebuild bridges on sites owned by corporations or by private persons . . . . and providing for the cost of reconstructing the same." Every one is bound to know that public officers cannot be authorized to take possession of bridge sites or any other private property without compensation, and the words quoted from the title are ample to give notice to both owners of the sites of destroyed or abandoned bridges and county commissioners, and to put them upon inquiry as to the body of the act. That is all that the title is required to do.

We are of opinion therefore that the act is not unconstitutional, and the judgment must be reversed.

But it does not necessarily follow that the mandamus prayed for must be awarded. The answer of the commissioners raises a question of fact which has not been disposed of. They deny that the bridge destroyed in 1865 has been abandoned, and aver that it has been rebuilt upon the original site. On this point the opinion of the court below says, "the location was slightly changed . . . . the new bridge was built north of the site of the old bridge one hundred and ninety-six feet at one end, and four hundred and forty-four feet at the other end." It may be admitted that this was presumably a new site, but not necessarily so. A slight variation would not make it new. If in the line of the same highway, or accommodating the same public travel in substantially the same place, it may be on the same site within the meaning of the act, though the piers or the approaches are different, and the bridge at a different angle with the stream. The flood which destroyed the bridge may have so altered the banks or the channel of the river as to necessitate some variation in the location. The judge calls the change slight. Whether or not it was sufficient to be called the use of a new site may depend largely on the physical features of the neighborhood, or on changes in the location of population and travel. It is a question of fact which the respondents have put in issue and which must be specifically ascertained and disposed of.

There are moreover legal questions in the case that have not

been raised or argued, but which cannot be ignored in a final decision. Is the act mandatory? In form it is permissive only, and, though a legislative conferring of authority is sometimes equivalent to a command to exercise it, yet it is not always so. The commissioners are "authorized" and if they "neglect or refuse to act" ten citizens may petition "the court of common pleas of the counties where located," who thereupon "may issue a mandamus." The commissioners clearly are compellable to act on the subject, but if they have acted and their judgment is against rebuilding, is it within their discretion? Is their discretion reviewable and subject to be superseded by that of the court, or is the act mandatory on both at the option of the ten citizens? Again the petition must be to the common pleas of the "counties," and no authority is expressly given, even if it could be, to either court to issue its mandamus to the commissioners of the other county. Each court must necessarily act in its own county, and if there is a discretion it is clear that both must concur before either can enforce a mandamus. These questions (and perhaps others will arise) we suggest without expressing any opinion upon them, because they lie in the pathway of the case, though they were not raised in the court below, and have not been argued here.

Judgment reversed and procedendo awarded.