## In re: Wilkes-Barre Bridge.

*County bridges—Act of May 24, 1917, P. L. 276—Act of June 7, 1919, P. L. 414.*

In a petition to erect a county bridge under the Act of May 24, 1917, P. L. 276, as amended by the Act of June 7, 1919, P. L. 414, the duties of the court are not merely formal or ministerial, and they may disapprove the petition, even when no exceptions have been filed thereto.

The Act of May 24, 1917, P. L. 276, provides for the location and construction of original bridges, and does not cover the replacement of old bridges with new ones.

The Act of February 14, 1907, P. L. 3, relates to the construction of new bridges whenever the existing bridge or bridges are not sufficient to accommodate the public travel, and prescribes that the commissioners shall obtain the approval of the court of quarter sessions and of the grand jury before constructing the new bridge.

Action for the new bridge under this statute is to be initiated by the county commissioners. The duties of the court under this act are also not merely ministerial or formal, and the approval of the court is essential.

Where, on a petition to construct a bridge to take the place of an existing bridge, the five judges of the court of quarter sessions, sitting in banc, were unanimous in their conclusion that the proposed change involved an expenditure disproportionate to the benefit, and for the other reasons, stated in their opinion, could not concur with the grand jury and with the county commissioners, the Superior Court will not reverse, in the absence of abuse of discretion.

Argued March 3, 1925. Appeal, No. 35, Feb. T., 1925, No. 35, by County Commissioners, from order of Q. S. Luzerne Co., April Sessions, 1923, No. 258, In re: Proposed County Bridge at North Street, Wilkes-Barre, over the Susquehanna River to a point on Pierce Street, Kingston, together with bridges over Pond Holes and improvement of Certain Highway. Before PORTER, HENDERSON, TREXLER, KELLER, LINN and GAWTHROP, JJ. Affirmed.

Petition for the construction of a county bridge. Before FULLER, P. J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the petition for the following reasons:

Now 19th August, 1924, after much earnest deliberation, the court by unanimous opinion, is led to withhold its approval of this project because:

(1) Its great cost will impose a burden incommensurate with the benefit, upon a community already overburdened.

(2) It is less needed for traffic relief than other improvements under way, or in contemplation.

(3) By comparison with the suggested methods for the relief of river crossing traffic, it is less desirable in respect to location and expense, not to mention other considerations.

*W. A. Valentine,* and with him *John H. Dando* and *B. W. Davis,* for appellants.

No appearance and no printed brief for appellee.

OPINION BY LINN, J., April 28, 1925:

Appellants, as commissioners of Luzerne County, complain that the court below declined to approve their proposed construction of a new bridge over the Susquehanna River at North Street, Wilkes-Barre, to take the place of an existing bridge, after the grand jury had approved it; they contend that section 2 of the Act of May 24, 1917, P. L. 276, amended June 7, 1919, P. L. 414, is applicable and imposed upon the court the ministerial duty of approving, when, as here, no exceptions were filed against it. The court below refused to approve upon the ground that the cost would be incommensurate with the resulting benefit and that it would "cause grave injury to private and church property, and [is] at best a doubtful solution of traffic questions."

The county commissioners had filed their petition

averring that "the North Street Bridge, as well as the
two bridge-spans over the pond-holes, known as the Pond-
Hole Bridges, together with that portion of the highway
connecting the said bridge structures, as well as the ap-
proaches thereto, are insufficient and inadequate to ac-
commodate the public travel"; that they had adopted a
resolution, in its preamble reciting the insufficiency and
inadequacy of the bridges, and that it was expedient to
remove them and in their place erect new bridges, and
resolving to "take the proper proceedings to remove the
present structures and to construct in place thereof new
bridges......"; to obtain plans therefor and to present
a petition to the quarter sessions setting forth the "reso-
lution, plans, surveys, and estimate of costs," and that
"proceedings be further continued as required by the
Acts of Assembly in such cases made and provided";
they also averred that they had employed engineers who
had made plans and estimates, attached to the petition;
that petitioners had not finally determined the method
of construction to be employed but specified that it
should be one of two methods, described, the estimated
cost of each being given.  They desired leave to present
"the foregoing matter" to the next grand jury and
prayed for an order directing that notice of the fact be
given by posting hand-bills in conspicuous places "in the
neighborhood of the proposed bridge and approaches and
by publication at least once a week for three consecutive
weeks, in at least two newspapers of general circulation
published in the county substantially describing the lo-
cation and termini thereof, and giving the time, place
and purpose of such hearing before the grand jury."
The petition was presented, was ordered to be filed, with
notice of publication to be given as prayed for.  At the
time specified, no objection or exception appearing, the
court ordered that the "petition be presented to the next
grand jury......for its consideration and approval."
The grand jury reported: "......upon consideration of
the foregoing petition and upon full investigation there-
of, the same is herewith approved."  The court then

374          In re: WILKES-BARRE BRIDGE.

made an order, designating a period of ten days for filing exceptions to the proceedings and specifying a time for hearing exceptions. No exceptions were filed and when the matter was presented to the court and considered, the court declined to approve for reasons stated, and found at length in the reporter's statement of the case.

We come then to appellants' contention that the duty of the court to approve was merely ministerial. Appellants contend that their proceeding is governed by the Act of May 24, 1917, as amended, part of section 2 providing: "If the grand jury by a majority vote shall approve said application or petition, it shall thereupon certify its approval to said court; whereupon the court shall make an order fixing a time, not less than ten days thereafter, for the filing of exceptions thereto. Upon the hearing thereof the court may, for proper cause shown, disapprove of said application; otherwise, it shall make an order approving the location, and the plans and surveys therefor, and authorize such county to construct such bridge and its approaches, and to let a contract or contracts therefor, under specifications to be prepared by the county engineer or other proper county authority; and thereupon the said bridge and its approaches shall be deemed to be laid out and opened in accordance with the surveys, plans, accompanying said petition."

As no exceptions were filed, appellants contend that pursuant to that provision, the court could not disapprove but was required to approve the location and the plans and surveys, and authorize the commissioners to construct the bridge and its approaches, and let a contract or contracts therefor.

The appeal does not depend on the statute relied on by appellants. In 1917 two statutes authorizing construction of county bridges, were passed, the first, approved March 23, 1917, P. L. 12, and the second, approved May 24, 1917, P. L. 276 (amended June 7, 1919, P. L. 414). To the extent that they relate to county bridges, the slight differences between them are of no consequence in

this inquiry; each, in its first section, authorizes the lo-
cation of a bridge and approaches. The first act pro-
vides that after the joint concurrence of the county com-
missioners, the grand jury and the quarter sessions, the
right to proceed with the construction of the bridge
shall be absolute, (P. L. 12 and 13); the second pro-
vides that after such joint concurrence "the said bridge
and its approaches shall be deemed to be laid out and
opened......": P. L. 276, 278. Obviously those words
relate to a proposed bridge on a new site,—an original
bridge—and not to the reconstruction or replacement of
an existing bridge, for this would not require location;
"The location for a county bridge may be said to be
fixed when it is duly approved and entered of record as
such to be erected by the county at the place selected for
it by the view appointed for that purpose......": West-
field Bor. v. Tioga Co., 150 Pa. 152, 155; see also Inter-
County Bridge, 82 Pa. Superior Ct. 59, 65. Both acts
relate to original bridges, a proposition definitely settled
for this court by the opinion of the Supreme Court in
Carrere v. Schmidt, 278 Pa. 457, in which Mr. Justice
SCHAFFER, speaking for the court, said of the Act of
March 23, 1917, P. L. 12: "The Act of 1917 contemplates
an entirely different situation and provides for the loca-
tion and construction of original bridges and does not
cover the replacement of old bridges with new ones."
While that conclusion expressly relates only to the first
of the two statutes under discussion, there is nothing
in the second justifying a different interpretation.

The petition and the plan annexed show that it is pro-
posed to build a single bridge on the site of the present
bridge over the river and the two spans over the pond
holes. It is also proposed to make the approach to the
new bridge somewhat different from the existing ap-
proach, but this difference will not make it any the less
a replacement of the existing bridge. In Seabolt v. Com-
missioners, 187 Pa. 318, 325, it appeared that a new
bridge was built not on the site of the old bridge but 196
feet away from it at one end, and 444 feet away at the

other end, and of that difference the court said: "It may be admitted that this was presumably a new site, but not necessarily so. A slight variation would not make it new. If in the line of the same highway, or accommodating the same public travel in substantially the same place, it may be on the same site within the meaning of the act, though the piers or the approaches are different, and the bridge at a different angle with the stream." When the same case went up again, 197 Pa. 110, the court below was affirmed in holding that the rebuilt bridge was substantially on the same site within the meaning of the statute; see also the Inter-County Bridge, 82 Pa. Superior Ct. 59, 65.

The Act of February 14, 1907, P. L. 3, is as follows: "An act enlarging the powers of county commissioners to erect county bridges; empowering them to erect and construct new bridges whenever the existing bridge or bridges are not sufficient, for any cause, to accommodate the public travel. Section 1. Be it enacted etc., That whenever it shall appear to the commissioners of any county that any county bridge, heretofore, or hereafter to be, erected or constructed, is not sufficient for any cause to accommodate the public travel, it shall be lawful for the said commissioners to erect and construct a new and sufficient bridge to take the place of the then existing bridge: Provided, however, that said commissioners first have the approval of the court of quarter sessions and of the grand jury of the proper county. The said new bridge when constructed shall be a county bridge." Of that statute, the Supreme Court said, In Carrere v. Schmidt, supra: "It will thus be seen, that by its express language this statute relates to the construction of new bridges when existing bridges are not sufficient to accommodate the public travel and prescribes that the commissioners shall obtain the approval of the court of quarter sessions and of the grand jury before constructing the new bridge. Action for the new bridge under this statute is to be initiated by the county commissioners."

That statute is applicable and requires that the commissioners must "first have the approval of the court of quarter sessions and of the grand jury of the proper county." There is no indication that the approval of the court is intended to be ministerial or merely formal. As the approval of the court was refused in this case, we inquire whether the refusal appears to have been a proper exercise of the judicial discretion vested in the court. The five judges of the quarter sessions, sitting in banc, were unanimous in their conclusion that the proposed change involved an expenditure disproportionate to the benefit, and that for the other reasons stated in their opinion, they could not concur with the grand jury and with the county commissioners.

As appellants rely wholly on the position that the court had no authority to disapprove, their argument is destitute of any suggestion that the discretion of the court—if exercisable—was not wisely exercised; we find nothing in the record justifying us to disagree with the court below.

Judgment affirmed.

Judge HENDERSON concurs in the judgment.