## NATIONAL TEA COMPANY v. STATE.
## ALLIED STORES CORPORATION v. SAME.[1]

June 16, 1939.

Nos. 31,948, 31,949.

[1]Reported in 286 N. W. 360.

*J. A. A. Burnquist,* Attorney General, and *Matthias N. Orfield,* Special Attorney, for the State.

*Doherty, Rumble, Butler, Sullivan & Mitchell,* for respondents.

JULIUS J. OLSON, JUSTICE.

Two cases are here upon the state's appeals from judgments rendered upon separate findings made by the court in each case. As both cases involve identical questions of law and, to a controlling extent, identical questions of fact, we shall discuss only the National Tea Company case and shall refer to it as plaintiff and to the state as defendant.

An action was brought by plaintiff pursuant to the provisions of L. 1933, c. 213 (3 Mason Minn. St. 1936 Supp. §§ 5887-1 to 5887-18), as amended by Ex. Sess. L. 1933-1934, c. 16 (3 Mason Minn. St. 1936 Supp. §§ 5887-11, 5887-11a), to recover from defendant certain amounts of "chain store taxes," so-called, paid to the state under protest. There is no question about the procedural remedy having been taken in full compliance with the mentioned act. The legal problem presented is limited to the constitutionality of the chain store tax only insofar as it relates to that portion of the act which sought to impose a gross sales tax graduated according to volume of gross sales [§ 2(b)]. Plaintiff contested both features of the act in the court below. The court held the gross sales portion of the tax to be void, but upheld the specific tax [§ 2(a)]. It also determined the two elements entering into the tax imposed to be severable so that the "specific amount" of the tax [§ 2(a)] survived the striking down of the "gross sales" portion thereof. Plaintiff has not appealed, so there is no issue here as to the validity of the "specific" chain store part of the tax. The question is not whether chain store owners may, for taxation purposes, be validly classified separately from single store owners, but whether the imposition of a graduated gross sales tax upon all those engaged in conducting chain stores is discriminatory as between such owners, thus violating the constitutional requirement of uniformity.

The mentioned act became effective July 1, 1933, and was repealed July 24, 1937, by Ex. Sess. L. 1937, c. 93 (3 Mason Minn.

St. 1938 Supp. §§ 5887-18a to 5887-18t). That enactment reënacted the specific tax feature, advancing the rates, but omitted that portion relating to gross sales taxes. The present action resulted in judgment for the recovery of the amounts paid for the last six months of 1933 and for the entire year 1934 insofar as payment included taxes based upon gross sales.

Much testimony was taken. The record is voluminous. There are numerous exhibits. Counsel have ably summarized the facts so that our work has been much simplified. Their briefs have gone into every phase of the subject with commendable thoroughness, for all of which they deserve and are gratefully given due credit.

The trial court made extensive findings, amended later on motion. These bespeak careful and conscientious study on its part.

The act selects as the class to be taxed under it the owners of chain retail stores. That classification is not here open to question. The gross sales portion of the act in effect divides chain store merchants into 11 different classes based upon their volume of gross sales and imposes a different rate upon every such class. The different owners are taxed at different rates for performing the same acts, selling the same kind of merchandise, and at identical prices. The "gross sales" during the taxable period is the only measure applied.

Plaintiff's stores exist generally throughout the state and are operated in both large and small cities and towns. They are in direct competition with stores in the same line of business operated by other chains, by members of voluntary chains, and by owners of single stores. Generally speaking, plaintiff's stores are found to be competing with all three types of operation. The competing chains are of various sizes as measured by either number of stores or aggregate gross sales. As a consequence these competitors have been subject to and have paid taxes under the act at various rates both as to the specific and gross tax sales features. This finding is especially important:

"Thus an analysis of the taxes paid by the plaintiff and 22 of its principal chain competitors for the year 1934 shows that the gross

sales tax average or composite rates paid by the competitors varies from .05 per cent to .85 per cent as compared with the rate of .87 per cent paid by plaintiff. The maximum rates varied from 1/20 of one per cent to one per cent, the latter being the maximum rate paid by plaintiff. * * *

"The gross sales tax is laid as an excise upon individual sales. As each sale is made liability for tax upon that sale arises. Different sales, however, take different rates, though they be of identical articles or merchandise and be made in identical manner. The rate upon any sale depends upon the number and size of sales already made in the current year. The Act therefore taxes different persons at different rates for the privilege of doing the same act, and taxes the same person at different rates for the exercise of the same privilege at different times, depending upon the number of times it has previously been exercised in a given year."

In this state, as elsewhere, so the court found,—

"there is no constant or uniform relation between volume of gross sales and amount or rate of net profit. There are wide variations in the profit margins as between different kinds of business and different kinds of merchandise; also wide differences in the rate of net profit made by different concerns in the same line of business for any given period; also wide variations in the rate of profit made by the same concern or concerns in any given line of business from year to year and from time to time."

The court concluded that in the light of the foregoing findings (here much abbreviated but we think of controlling importance)—

"the gross sales tax is arbitrary, unreasonable, unequal, and discriminatory, and the classification of chain store systems or concerns according to the volume of their gross sales (resulting from the graduation of the gross sales tax rates) is without relation to the purpose of the Act and without relation to the value of the privilege for which the tax is enacted, and the imposition of the tax, so far as measured by Section 2(b) of the Act is in violation of Article 9, Section 1," of our constitution, "and in violation of

Article XIV, Section 1, of the Amendments to the Constitution of the United States, and is therefore void."

■ Under U. S. Const. Amend. XIV, § 1, it is provided that, "no State shall * * * deny to any person within its jurisdiction the equal protection of the laws." Minn. Const. art. 9, § 1, provides: "Taxes shall be uniform upon the same class of subjects, * * *." In Reed v. Bjornson, 191 Minn. 254, 253 N. W. 102, we held that these provisions of the federal and state constitutions impose identical restrictions upon the legislative power of the state in respect to classification for purposes of taxation.

■ Our cases hold (and that is the general rule) that the legislature "has a wide discretion in classifying property for the purposes of taxation, but the classification must be based on differences which furnish a reasonable ground for making a distinction between the several classes. The differences must not be so wanting in substance that the classification results in permitting one to escape a burden imposed on another under substantially similar circumstances and conditions. The rule of uniformity, established by the Constitution, requires that all similarly situated shall be treated alike." State v. Minnesota Farmers Mut. Ins. Co. 145 Minn. 231, 234, 176 N. W. 756, 757; State ex rel. Mudeking v. Parr, 109 Minn. 147, 152, 123 N. W. 408, 134 A. S. R. 759; In re Improvement of Third Street, 185 Minn. 170, 240 N. W. 355.

So much for our own cases. The Federal Supreme Court has frequently passed upon this phase. Illustrative of the principle is the case of Louisville G. & E. Co. v. Coleman, 277 U. S. 32, 37, 48 S. Ct. 423, 425, 72 L. ed. 770, 774, the court there saying:

"In the first place, it may be said generally that the equal protection clause means that the rights of all persons must rest upon the same rule under similar circumstances, * * * and that it applies to the exercise of all the powers of the state which can affect the individual or his property, including the power of taxation. * * * It does not, however, forbid classification; and the power of the state to classify for purposes of taxation is of wide range

and flexibility, provided always, that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' \* \* \* That is to say, *mere difference is not enough: the attempted classification 'must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis.' "* (Italics supplied.)

■ Our act, as we have seen, selects as a class to be taxed the owners of chain retail stores, dividing them into 11 classes and basing the rate of taxation upon the volume of gross sales, a different rate being applied to each class. So the question is: Does this classification rest upon any ground having a rational relation to the subject of the enactment? Obviously the tax is not one in the nature of earnings, income, or profits. The element of profit, income, or earnings is not considered in fixing the tax because sales wholly unprofitable or even if entailing a loss are taxed exactly upon the same basis as profitable sales. The only base is the volume of sales, not whether the result is a profit or loss. If it were to be considered a tax on sales the same lack of justifying relationship exists, since the rate applicable to each sale depends upon the number and size of preceding sales in the taxable year. Nor is it a privilege tax, since the amount of tax bears no relation to the value of the privilege. The different owners are taxed at different rates for performing the same act, the tax being dependent upon the frequency and amount of the various sales during the tax period. Nor do we think it can be justified as a tax upon property sold as there would be wide discrimination with respect to property of the same kind and character under different ownerships. Here as in the case of Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 556, 55 S. Ct. 525, 527, 79 L. ed. 1054, 1057:

"The statute operates to take as the tax a percentage of each dollar due or paid upon every sale, but increases the percentage if

the sale which is the occasion of the tax succeeds the consummation of other sales of a specified aggregate amount."

It is a tax upon gross receipts and as such (294 U. S. 558, 55 S. Ct. 528, 79 L. ed. 1058) "affects each transaction in proportion to its magnitude and irrespective of whether it is profitable or otherwise."

The state contends that the legislative right to classify chain stores separately for the purpose of taxation and to subclassify them according to their total number has been definitely established by the Federal Supreme Court in four cases as follows: State Bd. of Tax Commrs. v. Jackson, 283 U. S. 527, 51 S. Ct. 540, 75 L. ed. 1248, 73 A. L. R. 1464, 75 A. L. R. 1536; Louis K. Liggett Co. v. Lee, 288 U. S. 517, 53 S. Ct. 481, 77 L. ed. 929, 85 A. L. R. 699; Fox v. Standard Oil Co. 294 U. S. 87, 55 S. Ct. 333, 79 L. ed. 780; Great A. & P. Tea Co. v. Grosjean, 301 U. S. 412, 57 S. Ct. 772, 81 L. ed. 1193, 112 A. L. R. 293. Counsel say that "each of these cases held valid a progressive tax levied on chains in accordance with the number of stores in the chain." Hence, so the argument goes, "the unit of measure is a matter of detail which may be left to the legislature." The trouble with that argument is that as to the first three cases cited all were decided prior to the Stewart case; and, while the Grosjean case was decided later, it nowhere appears that the Stewart case was questioned. That opinion is founded upon prior cases holding that the number of stores in a given chain affords a rational basis for classification for the exaction of progressively higher taxes. As to that phase the court held with the state. It is only that portion of the act which relates to a tax upon gross sales that is involved here. In none of the cases cited and relied upon by the state is that element present as the basis for taxation. The precise question here presented has been directly passed upon adversely to the state's contention in the following five cases: Stewart Dry Goods Co. v. Lewis, 294 U. S. 550, 55 S. Ct. 525, 79 L. ed. 1054; Great A. & P. Tea Co. v. Valentine (D. C.) 12 F. Supp. 760, affirmed *per curiam* in Valentine v. Great A. & P. Tea Co. 299 U. S. 32, 57 S. Ct. 56, 81 L. ed. 22; Ed. Schuster & Co. Inc. v. Henry, 218 Wis. 506, 261 N. W. 20; *certiorari* denied in

Henry v. Wadhams Oil Co. 296 U. S. 625, 56 S. Ct. 148, 80 L. ed. 444; Lane Drug Stores, Inc. v. Lee (D. C.) 11 F. Supp. 672; Great A. & P. Tea Co. v. Harvey, 107 Vt. 215, 177 A. 423. The leading case is that of Stewart Dry Goods Co. v. Lewis, *supra*. Comparing the act there considered with our own, we find the two acts so akin in language and purpose as to make them, in substance and effect, identical. There, as here, classification of merchants for taxation purposes was placed upon the basis of volume of gross sales. The court held the act to be so arbitrary, unequal, and discriminatory as to offend the federal constitution and hence was void.

The court in the case of Ed. Schuster & Co. Inc. v. Henry, *supra*, points out the distinctions between the holdings of the Supreme Court in Fox v. Standard Oil Co. *supra*, and other cases and the holding in the Stewart case. On that phase the Wisconsin supreme court said (218 Wis. 514-515, 261 N. W. 21, 23-24) :

"Although the classification of chain stores for the imposition of license fees at rates higher than those applicable to single stores, and even fees graduated upward on each store or unit of stores as the total number increased, has been held reasonable because of advantages incidental to the conduct of multiple stores and obvious differences in chain methods of merchandising as contrasted with those practiced in the operation of but one store [citing the Jackson, Liggett, and Standard Oil Co. cases, *supra*], it should be noted that, in so concluding in Fox v. Standard Oil Co., *supra*, the court took into consideration the fact that the consequences of the graduation in the license fees, then under consideration, between chains differing in the number of units, were not disproportionate to the benefits derived from longer as compared to shorter chains, so as to result in arbitrary discrimination. *It was just in that respect, however, that the court held in the Stewart Case, supra, that the imposition of varying rates of taxation upon the proprietors of stores in the taxable class solely by reference to the volume of their respective transactions, as measured by the gross sales or income derived therefrom, without regard to any reasonable relation be-*

*tween the graduations in the tax and the relative benefits derived by any one of them* by reason of their operating either as part of a larger or a smaller chain, and without any regard to net profits or losses which they had derived from their operations, *was so unreasonable and arbitrary as to render the enactment void.*" (Italics supplied.)

And the opinion points out [261 N. W. 21, 23] that the Fox case was decided January 14, 1935, whereas the Stewart case was decided March 11, 1935.

We think the five cases to which we have referred have so definitely and finally disposed of the legal problem presented as to make it needless for us to analyze or discuss the great number of other tax cases where the same constitutional question was involved. These being the only cases to which our attention has been called directly deciding the question presented, we are of opinion that we should follow them and that it is our duty so to do.

Each judgment is therefore affirmed.

MR. JUSTICE HILTON, being incapacitated by illness, took no part.

MR. JUSTICE PETERSON took no part.

