GENERAL MILLS, INC. v. DIVISION OF EMPLOYMENT AND SECURITY FOR MINNESOTA AND ANOTHER.[1]

July 11, 1947.

No. 34,400.

---

[1]Reported in 28 N. W. (2d) 847.

*John W. McConneloug* and *Walter T. Ryan,* for relator.

*J. A. A. Burnquist,* Attorney General, *K. D. Stalland,* Assistant Attorney General, and *George W. Olson,* for respondents.

THOMAS GALLAGHER, JUSTICE.

Proceeding to review a decision of the director of the division of employment and security assigning a contribution rate to General

Mills, Inc. (relator), for the year 1946, made pursuant to M. S. A. § 268.06.

Relator, an employer, with its principal office in Minneapolis, is governed by the experience rating provisions of § 268.06, which is a part of the state employment and security act. During the three-year period ending June 30, 1945, benefits in the amount of $2,437.56 were charged against relator's experience rating account.

On February 5, 1946, the division of employment and security notified relator that its contribution rate for the calendar year beginning January 1, 1946, had been determined to be 1.50 percent. Thereupon relator, on March 4, 1946, within the period permitted under § 268.06, subd. 24, tendered to the division, for the employment and security fund, the aforesaid $2,437.56, representing the benefit charges above indicated, and made application to the division for the minimum contribution rate of .50 percent for the calendar year 1946.

Subsequently, on March 5, 1946, the division notified relator that under § 268.06, subd. 24, as amended by L. 1945, c. 376, § 3, subd. 3, voluntary contributions in liquidation of benefits chargeable were limited to a total amount not to exceed $300, and, based thereon, denied relator's application for the minimum rate.

On March 6, 1946, within the period permitted by § 268.06, subd. 20, relator in writing protested the rate of 1.50 percent assigned to it for 1946 and the refusal of the division to accept its tender of benefit charges as above described and the refusal of the division to assign to relator the minimum rate of .50 percent, upon the ground that the amendment above referred to (L. 1945, c. 376, § 3, subd. 3) was unconstitutional and void.

On March 18, 1946, by written notice, the division informed relator that upon review of relator's account and the calculations upon which its experience rate was based, the division found that the rate of 1.50 percent previously assigned relator was proper. On subsequent appeals, the aforesaid determination was affirmed respectively by the appeal tribunal of the division and by the director

of the division. Thereafter, upon petition of relator, certiorari was issued by this court to review the decision of the director.

It is undisputed that relator's payroll for 1945 was $8,410,039.94. It is assumed that its 1946 payroll would be approximately the same amount. At the rate of 1.50 percent assigned to it for 1946, its tax thereon would be $126,150. If it is allowed to pay back the benefits charged in the sum of $2,437.56 and obtain the rate of .50 percent on its 1946 payroll, its tax, based upon the latter percentage, would be $42,050 plus benefits charged against it of $2,437.56. Thus, the lower rate would result in a saving to relator of approximately $81,663.

On review, the sole question for determination is whether that portion of the first paragraph of § 268.06, subd. 24, which reads, "provided all benefits so charged are less than $300," violates Minn. Const. art. 9, § 1, or U. S. Const. Amend. XIV.

■ The first paragraph of § 268.06, subd. 24, provides:

"Any employer who has been assigned a contribution rate pursuant to subdivision 4 of this section may, for the calendar year 1945 or any calendar year thereafter, obtain a cancelation of all benefits charged to his account during the 36 consecutive month period ending June 30 of the preceding year by making a voluntary contribution to the unemployment compensation fund in an amount equal to all the benefits charged during such period, *provided all benefits so charged are less than $300."* (Italics supplied.)

Minn. Const. art. 9, § 1, provides that "Taxes shall be uniform upon the same class of subjects." U. S. Const. Amend. XIV, provides:

"* * * nor shall any state deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws."

It is well established that the standard of protection afforded by the Fourteenth Amendment is the same as that given by Minn. Const. art. 9, § 1, requiring that taxes be uniform upon the same class of subjects. National Tea Co. v. State, 205 Minn. 443, 286 N. W. 360; C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504,

297 N. W. 9. Accordingly, the question presented here may be discussed generally with reference to both the state and federal constitutional provisions referred to without distinction.

■ The legislature, in the last analysis, is the sole arbiter of the purposes for which taxes are levied, the extent of taxation, the apportionment thereof, and the property or class of persons upon which the tax shall operate, subject to the limitation, of course, that the taxes levied be for public purposes. 1 Cooley, Taxation (4 ed.) §§ 70 and 71; People ex rel. Hatch v. Reardon, 184 N. Y. 431, 77 N. E. 970, 8 L.R.A. (N.S.) 314, 112 A. S. R. 628, 6 Ann. Cas. 515. It has the right of selection and the power to classify by imposing burdens of varying degrees on different classes of property, even to the extent of eliminating entirely the burden of taxation resting upon certain property, subject to the restriction that persons and property within the same class be treated equally and that the classifications made rest upon some ground of difference having a fair relationship to the object of the legislation.

As stated in Louisville G. & E. Co. v. Coleman, 277 U. S. 32, 37, 48 S. Ct. 423, 425, 72 L. ed. 770, 774:

"* * * the power of the state to classify for purposes of taxation is of wide range and flexibility, provided always, that the classification 'must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.' "

■ Our decisions are in accord with the principles above expressed. We have frequently held that the legislature has a wide discretion in classifying property for the purposes of taxation, provided its classifications are based upon differences which furnish a reasonable ground for the resulting distinctions between the several classes. State ex rel. Mudeking v. Parr, 109 Minn. 147, 123 N. W. 408, 134 A. S. R. 759; State v. Minnesota Farmers Mut. Ins. Co. 145 Minn. 231, 176 N. W. 756; Reed v. Bjornson, 191 Minn. 254,

253 N. W. 102; National Tea Co. v. State, 205 Minn. 443, 286 N. W. 360, *supra*.

■ The courts are not at liberty to speculate upon the considerations which motivate the legislature, or to declare void legislative classifications where there is some reason therefor, even though the judiciary may not hold such reasons in the same high regard as did the legislature. Madden v. Kentucky, 309 U. S. 83, 60 S. Ct. 406, 84 L. ed. 590, 125 A. L. R. 1383. As stated in Carmichael v. Southern Coal & Coke Co. 301 U. S. 495, 510, 57 S. Ct. 868, 872, 81 L. ed. 1245, 1253, 109 A. L. R. 1327:

"* * * A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action. Only by faithful adherence to this guiding principle of judicial review of legislation is it possible to preserve to the legislative branch its rightful independence and its ability to function."

In C. Thomas Stores Sales System, Inc. v. Spaeth, 209 Minn. 504, 515, 297 N. W. 9, 16, we stated:

"* * * Where the classification rests upon some reasonable difference there is no denial of equal protection of the law. * * * 'Inequalities which result from a singling out of one particular class for taxation or exemption, infringe no constitutional limitation.'" (Citing Carmichael v. Southern Coal & Coke Co.)

■ In line with the foregoing authorities, the United States Supreme Court has upheld the constitutionality of legislation classifying or distinguishing employers of eight or more persons from those employing less than that number, Carmichael v. Southern Coal & Coke Co. *supra;* Steward Machine Co. v. Davis, 301 U. S. 548, 57 S. Ct. 883, 81 L. ed. 1279, 109 A. L. R. 1293; distinguishing between

operators of coal mines employing more than 20 employes and those employing less, Booth v. Indiana, 237 U. S. 391, 35 S. Ct. 617, 59 L. ed. 1011. This court has upheld the constitutionality of the Minnesota employment and security act, which excluded from its operation employers of less than eight persons in cities of less than 10,000 population. Eldred v. Division of Employment and Security, 209 Minn. 58, 295 N. W. 412. Likewise, legislation differentiating in the tax burden applicable to trucks used in the transportation of agricultural and dairy products and the taxes applicable to trucks engaged in delivering groceries, laundry, etc., has been held constitutional. McReavy v. Holm, 166 Minn. 22, 206 N. W. 942. See, also, Engel v. O'Malley, 219 U. S. 128, 31 S. Ct. 190, 55 L. ed. 128; Klein v. Board of Tax Supervisors (Ky.) 282 U. S. 19, 51 S. Ct. 15, 75 L. ed. 140, 73 A. L. R. 679; State ex rel. Webber v. Felton, 77 Ohio St. 554, 84 N. E. 85, 12 Ann. Cas. 65; S. Buchsbaum & Co. v. Gordon, 389 Ill. 493, 59 N. E. (2d) 832.

■ From the foregoing authorities, it is clear that a legislative classification which may result in inequities or inequalities is not for that reason unconstitutional if it can be established that persons within the classifications made are similarly treated and the distinctions between classes bear a reasonable relationship to the objects of the legislation. Seabolt v. Commissioners, 187 Pa. 318, 41 A. 22; Magoun v. Illinois Trust & Sav. Bank, 170 U. S. 283, 18 S. Ct. 594, 42 L. ed. 1037; National Tea Co. v. State, 205 Minn. 443, 286 N. W. 360, *supra.*

■ In the instant case, it seems apparent that the legislature in enacting § 268.06, subd. 24, created classifications bearing a reasonable relationship to the objects of the employment and security act based upon reasonable distinctions, and hence not the result of accident, or hostility to any group or class of employers. It appears that the $300 figure arrived at was approximately the lowest measure of unemployment experience which an employer could have over a three-year experience period, to wit: A single employe in the lowest earnings bracket of the benefit schedule then under consideration as an amendment to § 268.07, subd. 2, drawing full benefits in each of

the three years of such experience period. The record indicates that the legislature's object in making this classification was to correct inequalities resulting from employment conditions under wartime economy and their impact upon the contribution rate structure. The classification, accordingly, rested upon a basis founded in reason rather than upon whim, caprice, or hostility. It must follow that the legislature did not exceed its power or violate either the state or federal constitution in making the classification based upon the figure specified.

Affirmed.