## Atlantic Refining Co., Appellant, v. Van Valkenburg.

*Taxation—Mercantile tax—Corporations—Manufacturing corporations—Oil refining companies — Distribution stations — Tax on sales and deliveries at stations—Classification—Act of May 2, 1899, P. L. 184.*

1. Where an oil refining company maintains distribution stations at various points, apart from its main plant, and from these stations sells and delivers its own products, and also products manufactured by others, it is liable under the Act of May 2, 1899, P. L. 184, for the mercantile tax on the "whole value, gross, of business

transacted annually" at such stations, irrespective of the fact that orders for certain of the goods there delivered did not originate at the stations but came through its central selling force at the main plant.

2. In such a case the company's stations are not mere storage houses, but to a certain extent at least, are sales stores.

3. In arranging a scheme of classification as a basis for taxation, the legislature may properly consider the "purpose" back of a given state of facts, and make the existence of such purpose the controlling element in determining tax liability.

Mr. Chief Justice BROWN filed a dissenting opinion in which Mr. Justice WALLING joined.

Argued October 6, 1919.    Appeal, No. 287, Jan. T., 1919, by plaintiff, from decree of C. P. No. 3, Phila. Co., March T., 1918, No. 5727, for defendants in case of the Atlantic Refining Company v. F. A. Van Valkenburg, William E. Finlay, Edward A. Devlin, James A. Carey and John J. Crout, Board of Mercantile Appraisers for the County of Philadelphia.   Before BROWN, C. J., STEWART, MOSCHZISKER, FRAZER, WALLING and KEPHART, JJ. Affirmed.

Bill in equity for an injunction to restrain the assessment and collection of a mercantile tax.   Before MC-MICHAEL, P. J.

The court entered a decree on demurrer for defendants. Plaintiff appealed.

*Error assigned* was the decree of the court.

*Thomas Patterson,* with him *Yale L. Schekter* and *Ira Jewell Williams,* for appellant.—The mere having of a store or warehouse apart from the factory is not sufficient to create liability to mercantile tax.

The legislative intent is to be found in the words "having a store or warehouse apart from the factory for the purpose of vending goods."   The purpose, of course, may be proved as a matter of intention or by the actual use to which the particular station is put.   If the place is

actually used for vending goods, even though it were originally not so intended, then to the extent to which it is so used the manufacturer is carrying on business as a dealer and upon such business he is taxable. But a place which is used for storage merely, at which no sales take place, is not for the purpose of vending goods: Com. v. Teller, 144 Pa. 545; Com. v. Eynon-Evans Mfg. Co., 48 Pa. Superior Ct. 474; Com. v. Gillinder, 12 D. R. 635; Com. v. Vetterlein, 29 Pa. Superior Ct. 294.

The sales of appellant's manufactured products do not take place at the relay stations: American Tobacco Co., 173 Pa. 531.

*Arthur L. Shay* and *William I. Schaffer,* Attorney General, with them *John T. Murphy,* for appellee.—The appellant is liable for the tax on its whole volume of business transacted at its four separate stores: Haldeman v. Duncan, 51 Pa. 66; Staake v. Penna. R. R. Co., 231 Pa. 466; Brock & Co. v. McCaffrey, 3 Pa. Superior Ct. 431; Com. v. Thomas Potter Sons & Co., 159 Pa. 583; Com. v. Consolidated Dressed Beef Co., 245 Pa. 605; Perlman & Co. v. Sartorius & Co., 162 Pa. 320; Com. v. Teller, 144 Pa. 545; Pittsburgh Brewers' & Bottlers' Supply Co.'s Mercantile Tax, 38 Pa. Superior Ct. 121; Com. v. Cover, 215 Pa. 556.

OPINION BY MR. JUSTICE MOSCHZISKER, January 5, 1920:

Plaintiff corporation filed a bill in equity to restrain the collection of a mercantile tax assessed against it by the defendant appraisers, for the year 1917; the court below, on the authority of Com. v. Atlantic Refining Co., 69 Pa. Superior Ct. 32, entered judgment for defendants upon demurrer, and this appeal followed.

The averments of the bill show that defendants compose the Board of Mercantile Appraisers for the County of Philadelphia; that plaintiff is a Pennsylvania corporation engaged in refining oil and manufacturing certain

products thereof; that it has in Philadelphia a number of "relay or distribution stations," which it maintains as "storage and distribution points"; that the goods stored at, and distributed from, these stations are "almost entirely goods of the plaintiff's own manufacture." Plaintiff acknowledges, however, that certain of the goods so sold and distributed are not of its "own manufacture," and also that some of its own goods are sold and disposed of at these stations; but, in this connection, it is averred that "to the extent that goods sold by plaintiff are manufactured by others and to the extent to which its own manufactured goods are thus sold, plaintiff admits liability to tax, and has duly tendered the amount to defendants."

The contention of plaintiff is that it should not be obliged to pay a tax on sales of its own products, delivered from its so-called relay stations, where the orders for such sales did not originate at such stations but came through its central selling force. On the other hand, defendant's claim for the right to assess the tax on the whole volume of business done at such stations, represented by goods delivered therefrom, without regard to where the sale orders originated.

The method of doing business as set forth in plaintiff's bill is as follows: "The plaintiff's products are made to sell......and plaintiff employs the usual methods of selling....., namely, by traveling salesmen.....; these salesmen travel out of the factory office into territories assigned to them, the city being divided into sections ......; they make regular calls on prospective customers, make contracts, solicit truck orders and make daily reports and returns of the contracts and sales to the factory office;......plaintiff's manufactured products are transferred in large quantities by railroad or barge to its relay stations, where they are temporarily stored and where plaintiff's delivery trucks [which leave the factory with their first load] relay and refill, instead of

going to the factory for fresh supply of goods;......
credits are passed on at the factory office," where the
executive organization is located.

Section 1 of the Act of May 2, 1899, P. L. 184, under
which defendants propose to assess plaintiff, provides
that each "vender" or "dealer" in "goods, wares and mer-
chandise" shall pay an annual license and mercantile tax,
in the amounts there fixed, on "the whole volume, gross,
of business transacted annually." Section 11 of the Act
of April 22, 1846, P. L. 489, as interpreted by section 1
of the Act of February 27, 1868, P. L. 43, provides that a
manufacturer "having a store or warehouse apart from
his manufactory......, for the purpose of vending
goods," shall be classified and required to pay an annual
license and mercantile tax.                      ,

In arranging a scheme of classification as a basis for
taxation, the legislature may properly consider the "pur-
pose" back of a given state of facts, and make the ex-
istence of such purpose the controlling element in deter-
mining tax liability: see Com. v. McGlinn Distilling Co.,
265 Pa. 346. Here, on the facts at bar, it is quite clear
that, no matter what other purpose plaintiff may have in
view, it maintains its so-called relay stations "for the pur-
pose of vending goods," and does in fact there vend cer-
tain of its merchandise, as well as the goods of others;
—and these facts are controlling. In brief, plain-
tiff's stations are not mere storage houses but, to a cer-
tain extent at least, sales stores; and, as stated in Com.
v. Campbell, 33 Pa. 380, 385, a manufacturer is taxed
for selling his wares "when he keeps a store or warehouse
away from his manufactory, in which he sells the wares,
in the manufacture of which he is 'concerned or inter-
ested.'"

Since plaintiff keeps its stations, or stores, for the pur-
pose of vending goods, it must, under the relevant acts of
assembly, pay a mercantile tax on the "whole gross vol-
ume" of business there transacted, and not on a part
only. The very words of the legislation are repugnant

to plaintiff's idea of a division of the volume of such business into sales which, from every aspect, should be credited to the stores and those which, although delivered from the stores, might from some aspects be credited to the main factory. As stated by the Superior Court in Com. v. Atlantic Refining Co., supra, 35: "The goods delivered or handled through the stations do not become the subject of barter and sale until they arrive there, and, for purposes of the Act of 1899, the sales are accomplished from [and taxable at] the place where they are so made available."

In Com. v. Abbott's Alderney Dairies, 62 Pa. Superior Ct. 451, 454, 455, HENDERSON, J., citing the Act of May 2, 1899, P. L. 184, very properly states: "It was the purpose of the statute to impose such tax on permanent dealers having a place of business within the county; the assessment is not on the sales, however, but on the dealer. It is not important, therefore, whether these sales are actually made from wagons sent out from the place of business or are made at the store......In this view of the case it is not material whether the title......was transferred at the time the driver delivered the [goods] or whether it was received by the purchaser at [the business establishments of the seller]." The tax is on the gross volume of business transacted annually (Act of 1899), which, of course, must be judged by sales; but, as just pointed out, we are not concerned, in a case of this kind, with any nice question as to exactly when the title to the goods involved in these sales passes. The question is, can the sales be credited reasonably, within the meaning and intent of the tax law, to the place under consideration? Here it is apparent that the first separation from the bulk, for purpose of delivery to the customer, takes place at appellant's stations when the fluid is run from the storage tanks, there located, into its delivery wagons, and, to that extent at least, in each instance, the station marks the place of sale, or the place to which, under the tax laws, such sales may properly be credited.

In Com. v. Potter, 159 Pa. 583, 584, 585, construing the Act of May 4, 1841, P. L. 307, 310, and other relevant legislation, this court states that a mercantile tax is levied on "a mode of doing business," and that, if a manufacturer "keeps a store or warehouse where he sells goods manufactured by others, as well as those made by himself, he is liable to assessment as a dealer" (Osborn v. Holmes, 9 Pa. 333; see also Knisely v. Cotterel, 196 Pa. 614), adding that, when a manufacturer, be it a corporation or individual, opens a store, it "becomes a 'dealer in goods, wares and merchandise' within the meaning of the several acts" of assembly. As stated by President Judge RICE in Pittsburgh B. & B. Supply Co.'s Mercantile Tax, 38 Pa. Superior Ct. 121, 127-8, our cases do not establish "the general proposition that venders of or dealers in goods, wares and merchandise must necessarily mean those and those only who carry on the business of selling things previously purchased, in the same form and condition, and not in the form or condition to which they have been changed after passing through some process"; on the contrary, as further said by the same eminent jurist (p. 127), "in the construction of earlier mercantile tax laws, as well as in the construction of the first section of the Act of 1899, one who carries on the business of selling goods, wares and merchandise, manufactured by him, at a store or warehouse apart from his own shop or manufactory, has been held to be such a vendor or dealer as is liable to taxation upon the volume of business done by him at such store or warehouse."

Section 3 of the Act of March 4, 1824, Dunlop's Laws of Pennsylvania (3d ed.), 384, provides, "If any person or persons shall have more than one store in which foreign merchandise is vended, such person or persons shall be required to take out a license for each and every store"; and section 10 of the Act of May 4, 1841, P. L. 307, 310, provides that "from and after the passage of this act, the several provisions now in force of the Act of the 4th of

March, 1824,......and the several provisions of the Act of the 7th of April, 1830....., except so much thereof as may be hereby altered....., shall be and the same are hereby extended to all persons engaged in the selling or vending of goods, wares, merchandise, commodities or effects, of whatsoever kind or nature." In Com. v. Am. Tobacco Co., 173 Pa. 531, 534-5, construing section 1 of the Act of April 7, 1830, P. L. 387 (which, like the Act of 1824, before its extension by the Act of 1841, applied only to dealers in foreign merchandise), we state that "by a supplementary act it is provided, if any person shall have more than one store in which merchandise is vended, such person 'shall be required to take out a license for each and every store.'" While the American Tobacco Company case concerned a dealer in foreign merchandise, yet, as just shown, and there stated, the relevant legislation was extended in 1841 so as to include all persons subject to a mercantile tax, whether dealers in foreign or domestic merchandise (Com. v. Potter, 159 Pa. 583, 584); hence such legislation covers the present case, and a separate license tax must be paid for each of the stores conducted by appellant.

The cases last cited were decided prior to the Act of 1899, supra, but the statutes to which we have referred were not repealed by that act, so far as the necessity for separate licenses is concerned. The Act of 1899 repeals only former acts inconsistent therewith (Com. v. Vetterline, 21 Pa. Superior Ct. 587); many of its provisions indicate a legislative intention that "each dealer shall be classified and his business appraised at each store or place of business which he maintains, and, as hereinbefore pointed out, this requirement includes manufacturers, such as appellant, who maintain stores or warehouses apart from their factories for the purpose of vending goods.

Appellant, of course, does not question the jurisdiction in equity of the court below, nor is any point made as to the form of the final decree; and, since we are

deciding in defendants' favor on the grounds already stated, it is not necessary to discuss the jurisdictional or other questions presented by counsel for appellees.

The assignments of error are overruled and the decree entering judgment for defendant is affirmed.

DISSENTING OPINION BY MR. CHIEF JUSTICE BROWN:

The appellant is a manufacturing corporation, and admittedly not liable to a tax on goods of its own manufacture sold at its manufacturing plant. It concedes its liability to a tax on all goods sold at its distributing stations, whether manufactured by itself or others. The measure of relief for which it prays, and which is denied it by the majority of the court, is exemption from tax on goods not sold at a distributing station, but at its plant, to be delivered in the future. Because sales made at its plant happen to be delivered from one of its distributing stations, why should it be liable to a tax on them, when admittedly it would not be liable if the goods sold should be delivered directly from its plant? The legislature might have so directed, but I am unable to follow the reasoning of the majority of my brethren in holding that it has done so. I would reverse the decree below, reinstate the bill and award the relief to which the appellant, in my judgment, is clearly entitled. My Brother WALLING joins in this dissent.