# In re Mercantile License Tax of Pittsburgh Coal Company.

*Taxation—Mercantile tax—Sales—Sales by coal company of its own products—Act of May 2, 1899, P. L. 184.*

The Act of May 2, 1899, P. L. 184, providing for the assessment and collection of a mercantile license tax on retail sales, does not apply to sales made by a coal company of coal, mined at its own mines and subsequently sold at its own yards.

If, however, the coal company in addition to the sales of its own product buys and sells the output of other mines, it is liable for a tax on such sales.

Where a manufacturer who enjoys exemption from taxation on sales of his own product buys and sells goods manufactured and produced by other persons upon which the manufacturer does not bestow its own skill and labor, it then becomes a dealer in such goods, wares and merchandise to the extent of the sales outside of its own product.

Argued April 25, 1921. Appeal, No. 130, April T., 1921, by Commonwealth of Pennsylvania, from decree of C. P. Allegheny County, Oct. T., 1920, No. 2292, Docket "D" in the matter of appeal of Pittsburgh Coal Company from assessment of mercantile license tax for the year 1920. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Affirmed.

Appeal from tax settlement. Before REID, J.

The facts are stated in the opinion of the Superior Court.

The court entered the following decree from which the Commonwealth appealed:

And now, January 25, 1921, after hearing it is ordered that the above appeal by Pittsburgh Coal Company from assessment of mercantile license tax for the year 1920, be, and the same is hereby sustained as to all of said assessment except that upon gross sales of coal purchased from other mines or dealers and resold to customers at retail—the total of which is found to be $55,-000.63. The amount of the assessment for said year is accordingly fixed and determined as the sum of $57, the remaining part of the assessment of $1,070 being stricken off.

*Error assigned,* among others, was the order of the court.

*Arthur L. Shay,* and with him *Ralph C. Davis,* for appellant.—An exemption from taxation is never presumed and the Pittsburgh Coal Company is liable for a tax on all sales made at its yards: Conroy v. Pittsburgh Times, 138 Pa. 330, 339; Com. v. Marks, 248 Pa. 578; Coates v. Wallace et al., 4 Pa. Superior Ct. 253; New York & Erie R. R. Co. v. Sabin, 26 Pa. 242; Com. v. Cover, 29 Pa. Superior Ct. 409; Com. v. Cover, 215 Pa. 556; Com. v. Lackawanna Iron & Coal Co., 129 Pa. 346; Com. v. H. G. Tombler Grocery Co., 5 Northampton 297; Com. v. Swift & Co., 6 Pa. D. R. 664; Com. v. Teller, 144 Pa. 547; Com. v. Pocono U. Ice Co., 23 Pa. Superior Ct. 269; Atlantic Refining Co. v. Van Valkenburg, 265 Pa. 456; Com. v. Thorne, Neal & Co., 70 Pa. Superior Ct. 599.

*O. K. Price,* and with him *Don Rose,* for appellee.

OPINION BY LINN, J., July 14, 1921:

The question is whether appellee is liable for a mercantile license tax on retail sales of coal by it mined and

sold at its yards away from its mines. It was "rated and assessed as a retail dealer on account of its business carried on at......five yards in the City of Pittsburgh in the sum of $1,070, the same being based upon the volume of retail business transacted at said yards during the year ending December 31, 1919." The assessment was made pursuant to section 1 of the Act of May 2, 1899, P. L. 184, on gross retail sales of coal; part of the coal sold had been purchased by the coal company for resale, and the rest had been mined by the company. On appeal to the common pleas, the assessment was sustained to the extent of $57 on sales of coal purchased and was stricken off as to $1,013, the tax assessed on sales of coal mined. The case was heard on the petition for appeal and the answer of the Commonwealth; no testimony was taken, and with one exception all the facts stated in the petition were admitted in the answer.

Appellee is a corporation of Pennsylvania with its principal office or place of business in Pittsburgh. It is engaged in mining and selling bituminous coal and owns deposits of coal in Allegheny and adjoining counties. It averred that it "owns and operates numerous coal mines therein, from which it produces said coal and ships same by rail and water transportation; and in connection with and as part of its said business it owns certain retail yards situate in the City of Pittsburgh from which it sells at retail to consumers of coal so produced by it ......" The Commonwealth did not admit that averment but answered it by stating that "said yards are maintained for the purpose of vending coal at retail and ......are not [maintained] in connection with and part of the business of the Pittsburgh Coal Company." The court however found the fact as averred by appellee, and appellant now objects to the conclusion that the yards are maintained "in connection with and as part of its said business."

The coal mined was sold at four coal yards. Yard No. 2 "is connected directly with what is known as Keel-

ing or Fair Haven Mine" and the coal there sold was "delivered directly to said yard......in the mine cars in which and as it is loaded by the miners by means of a mine railroad owned by petitioner and extending partly underground and partly over the surface thereof to said yard." Yards Nos. 3, 4 and 5 "are separate and apart from the mines from which coal sold thereat is produced." The coal sold at yards Nos. 3, 4 and 5 "is transported thereto by water from [appellee's] mines situate on the Monongahela River by means of [its] own towboats and barges." The answer of the Commonwealth also admits the averment that "The coal produced by [appellee] and sold at its said yards is not a manufactured product, nor prepared in any way except that a portion of it is screened at the mine where it is produced to separate it into various sizes of slack and lump." As we understand the argument for the Commonwealth it comes to this; under the revenue system created by the Act of 1899 and prior laws on the subject the coal company must be considered a manufacturer, and as a manufacturer is not exempt from paying a mercantile license tax on goods, wares and merchandise manufactured by him and sold at his store maintained "apart from his manufactory or workshop," the coal company cannot be exempt on coal sold at yards apart from its mines; and the learned counsel for the Commonwealth take that position notwithstanding the admission already quoted that the coal in question is not a manufactured product. If we could adopt this contention, the business done at yard No. 2 would still not be taxable for, as we have quoted, the court below has found that yard to be directly connected with the mine: Com. v. Pocono Mt. Ice Co., 23 Pa. Superior Ct. 269.

Appellee asserts its exemption by section 10 of the Act of May 4, 1841, P. L. 307, 310, extending the provisions of previous statutes mentioned in it imposing liability for mercantile license taxes, to "all persons engaged in the selling or vending of goods, wares, mer-

chandise, commodities or effects, of whatsoever kind or nature, and all such sellers or vendors shall be classed and required to pay annually for the use of the Commonwealth, for their respective licenses, as follows:...... provided......nor any person who may vend or dispose of articles of his own growth, produced or manufacture shall be required to take out a license under this act."

As the history of this system of taxation has been stated in several recent cases, among them, Com. v. Pocono Mt. Ice Co., 23 Pa. Superior Ct. 267, 270; Brewers', etc., Supply Co.'s Mercantile Tax, 38 Pa. Superior Ct. 121, 125-127; Atlantic Refining Co. v. Van Valkenberg, 265 Pa. 456, 462, 463, and in an opinion by the late Justice ELKIN written.when he was attorney general and reported in 9 D. R. 117, 23 Pa. C. C. 369 and 3 Dauph. Co. 61, we need not restate it. It must be conceded that the coal company is not liable for this tax unless made so by legislation since 1841 because the law then was that no "person who may vend or dispose of articles of his own growth, produce or.manufacture shall be required to take out a license under this act." Certainly its coal mined by it is an article of its own production.

Was the exemption so conferred taken away? Section 11 of the Act of 1846, P. L. 489, taxed [1] "all dealers in goods, wares and merchandise, the growth, product and manufacture of the United States, and [2] every person who shall keep a store or warehouse, for the purpose of vending and disposing of goods, wares and merchandise where such person is concerned or interested in the manufacture of such goods, wares and merchandise ......provided that mechanics who keep a store or warehouse at their own shop or manufactory, for the purpose of vending their own manufactures exclusively, shall not be required to take out any license." The decisions indicate that act did not apply to miners of coal; it reduced the exempted class created in the Act of 1841 by restricting the immunity theretofore enjoyed by a par-

ticular member of the class, i. e., the mechanic, to sales made by him at his store or warehouse kept at his "own shop or manufactory"; it specified two classes of taxables (1) the dealer and (2) the person keeping apart from his factory a store to sell goods in the manufacture of which he was "concerned or interested."

Obviously neither class includes a miner. As to the product mined by him he is not a dealer: "A dealer, in the popular, and therefore in the statutory sense of the word, is not one who buys to keep, or makes to sell, but one who buys to sell again. He stands intermediately between the producer and the consumer, and depends for his profit, not upon the labor he bestows on his commodities, but upon the skill and foresight with which he watches the markets": Norris Bros. v. Com., 27 Pa. 494, 495.

Nor does appellee manufacture the coal it mines; manufacturing, as was said in the same case, is "making," Ibid, p. 496. "The meaning of the statute is perfectly clear. The legislature understood the words it was using. A tax was laid upon dealers, that is, upon those who should buy to sell. This, of course, did not include persons who sold the wares manufactured by themselves. Dealers, therefore, might evade the tax by having an interest in the factory. To prevent this the second clause was added taxing the manufacturers themselves wherever the goods manufactured were sold at a store separate from the workshop, but by express words exempting them to all other cases": Ibid, p. 496.

The Act of February 27, 1868, P. L. 43, definitely brought the manufacturer within the exemption conferred by the Act of 1846, which had specified mechanics only (though see Com. v. Potter, 159 Pa. 583, 585). Prior to those two acts, then, a mechanic or manufacturer could sell "articles of his own......produce or manufacture" anywhere, either at his factory or apart from it, without being "required to take out a license."

No other change in the law is mentioned by appellant prior to the Act of 1899, save that attention is called to the Act of the 18th of April, 1878, P. L. 28, exempting farmers selling at market houses in cities of the first class. We are not now concerned with the purpose of that enactment, though the exemption created in it is not limited to "articles of his own growth, (or) produce" as in the Act of 1841.

It is clear that the miner has not lost his exemption. In Com. v. Pocono Mt. Ice Co., supra, this court, speaking by Judge PORTER, stated its opinion to be that the legislation subsequent to 1841 dealt with mercantile pursuits, activities obviously not embracing bituminous coal mining and the marketing by the miner of the product of such mines. "The terms, 'vendor of, or dealer in, goods, wares and merchandise,' used in the first section of the Act of May 2, 1899, to designate the business subject to the tax, having been used in former statutes, and their meaning having been the subject of judicial inquiry and determination, they must be assumed, to have been used in the sense in which they had been interpreted by the court of last resort, in the absence of anything in the statute requiring a different interpretation: Commonwealth v. Bailey et al., 20 Pa. Superior Ct. 210. We find in the provisions of this statute nothing which would warrant a departure from this principle. The act, on the contrary, contained internal evidence that it was the legislative intention to deal only with mercantile pursuits. The title is 'an act to provide revenue by imposing a mercantile license on vendors of, or dealers in, goods,' etc. The 5th section which regulates the manner of making the assessment empowered the county treasurer to 'require the owner or business manager (of the company subject to taxation) to appear before him in person, with the books and accounts of his mercantile establishment for interrogation and examination.' The construction of the act contended for by the learned counsel for the Commonwealth would subject to the tax

every sale of the products of the farm, workshop and mine. This construction cannot, when we consider the provisions of the statute in the light of previous legislation and the decisions thereunder, be sustained"

We are referred to no authority holding that appellee waived its immunity from taxation on sales of coal mined merely by becoming a dealer as to the coal purchased and sold. All the coal sold at yard No. 1 had been purchased for the purpose of resale. It also appears that "under normal conditions appellee regularly sells only coal produced from its own mines at yards Nos. 2, 3, 4 and 5, confining its sales of purchased coal to yard No. 1. But in 1919, on account of strikes, the paramount authority of the United States Fuel Administration, and to aid in the distribution of fuel so far as possible during the abnormal conditions prevalent in 1919, it purchased coal and sold it at the other yards Nos. 2, 3 and 5." This finding is qualified by another stating that the coal by its books shown as purchased and sold at yard No. 2 was in fact not sold there, but on the order of the federal fuel administration was bought and sold at a siding near yard No. 2 and for convenience in accounting credited to that yard. With regard to yards 3 and 5 the finding was further qualified by another stating that the purchased coal resold at those two yards "was the product of the mine of another producer which the [appellee] had contracted to tow from the producer's mine to the plant of a manufacturing company to which [appellee] persuaded the purchaser to allow it to divert [to yards 3 and 5] for the use of its own customers in order to help out in the shortage of coal then prevalent." As to all the coal so purchased and sold appellee was held to be a dealer and taxable.

While a manufacturer enjoys exemption from this taxation only on sales of his product at his factory under the Acts of 1846 and 1868, supra, Justice ELKIN, when attorney general, in the opinion referred to, advised the auditor general that if parties so exempt "buy and sell

goods manufactured by other persons and upon which
they do not bestow their own care, skill and labor they
would then become dealers in goods, wares and merchan-
dise to the extent of the sales outside of their manufac-
tured product."

We therefore agree that it was proper to limit the
assessment to retail sales of coal purchased for the pur-
pose of sale, and to exempt appellee from the tax on
sales of its own mining.

The order is affirmed.