## American Stores Company v. City of Easton

Chidsey, Maxwell & Frack, for plaintiff; Newton R. Turner, for defendant.

STEWART, P. J., June 6, 1932.—This is a petition of the American Stores Company, representing that it is engaged in the grocery business in the City of Easton; that during the year 1932 it conducted fourteen stores in said city, and conducted the same number of stores in 1931; that its gross annual sales in 1931 amounted to $300,000 and upwards; that on December 15, 1931, the City of Easton enacted an ordinance, No. 835, amending an ordinance enacted by the said city on December 21, 1920 (copies of the ordinances were attached and marked Exhibits A and B); that a dispute exists between the petitioner and the City of Easton, whether or not petitioner is required to pay one license tax, covering all its business in the City of Easton, or whether it is required to pay a separate license tax on each store.

Section twenty-one of the original ordinance reads as follows:

"Class 1. General. All persons, firms or corporations transacting or doing business in the City of Easton as herein defined, and not especially enumerated and classified hereafter, or whose gross annual sales or contracts shall amount

to the sums hereinafter set forth, shall pay an annual license tax in the amounts set forth opposite the respective figures representing such gross annual sales or contracts. The annual sales or contracts of the last preceding year as reported to the mercantile appraiser, or as computed in the annual reports for Federal or State taxation, or as required in an affirmation to the mayor, shall be evidence of the amount of such sales or contracts. Failure to make such report, or the making false reports, shall be considered a violation of this ordinance.

"$300,000 sales and upwards........................ $100.00 per year  
200,000 sales and not exceeding $300,000............. 90.00 per year  
100,000 sales and not exceeding  200,000............. 80.00 per year  
 80,000 sales and not exceeding  100,000............. 70.00 per year  
 70,000 sales and not exceeding   80,000............. 60.00 per year  
 60,000 sales and not exceeding   70,000............. 50.00 per year  
 50,000 sales and not exceeding   60,000............. 40.00 per year  
 40,000 sales and not exceeding   50,000............. 30.00 per year  
 30,000 sales and not exceeding   40,000............. 20.00 per year  
 20,000 sales and not exceeding   30,000............. 10.00 per year  
 10,000 sales and not exceeding   20,000.............  7.50 per year  
  5,000 sales and not exceeding   10,000.............  5.00 per year  
Less than $5,000 sales..............................  2.50 per year  

and further provided that no license shall be issued for any business for less than $2.50."

As amended, so far as relates to this case, it reads:

"Class 1A. Department Stores. Department stores are defined as such which operate under one general corporate or firm name, but in the conduct of which business certain departments are conducted directly or indirectly by individuals, firms or corporations foreign to the firm title of the general store. Department stores shall pay a license of one hundred dollars annually and each foreign department therein shall pay a license of fifty dollars.

"Class 1B. Chain Stores. Chain stores are defined as such when more than one unit is operated by a controlling single individual, company or corporation. The license on each store unit so operated shall be fifty dollars per year.

"All ordinances or parts of ordinances inconsistent herewith be, and the same are, hereby repealed, and the penalty for the violation of the provisions of this amendment shall be the same as those provided and imposed for the violation of the ordinance to which the foregoing is an amendment, and this amendment shall be effective and operative on January 1, 1932."

The original ordinance passed in 1920 was passed under the Third Class City Act of June 27, 1913, Art. v, Sec. 3, Cl. 4, P. L. 568, 580, as amended by the Act of May 27, 1919, P. L. 310, 315. The said Third Class City Act of 1913 followed the act with respect to third class cities passed May 23, 1889, P. L. 277 (as amended by the Act of May 16, 1901, P. L. 224), and the predecessor of the Act of 1889, covering the rights and powers and duties of third class cities was the Act of May 23, 1874, P. L. 230. The amending ordinance passed in December of 1931 was passed under The Third Class City Law of June 23, 1931, P. L. 932. This recent Act of 1931 repeals the Third Class City Act of 1913 above mentioned as amended by the Act of 1919 above mentioned, but in section 104 thereof (P. L. 937) provides: "All ordinances, resolutions, regulations and rules, made pursuant to any act of Assembly repealed by this act, shall continue with the same force and effect as if such act had not been repealed."

In considering the question in this case, it is, therefore, necessary to consider the provisions of the said Act of 1913, as amended by the said Act of 1919,

in so far as the original ordinance is concerned, and the said Act of 1931 in so far as the amended ordinance is concerned. The matter is simplified by reason of the fact that in so far as license taxes are concerned the same language is used in the Act of 1931 (section 2601, p. 1029) as is used in the Act of 1913, as amended by said Act of 1919 (section nine of the Act of 1919, p. 315), excepting that places of amusement are included in the Act of 1931. It is to be noted that in both the Act of 1919 and the Act of 1931 the authority to levy a license tax is specifically given "for general revenue purposes." In fact, the purpose of the amendment of the Act of 1913 by the Act of 1919 was, inter alia, the insertion of the words "for general revenue purposes." This amendment placed the purpose of the license tax beyond all question. The Third Class City Act of 1874 was construed as giving authority to impose license fees under the police power, but the Act of 1889, which followed closely the language of the Act of 1874 in so far as license taxes are concerned, made the same important change that the amendment of 1919 made in the Act of 1913, to wit, the insertion that the levying of such license tax was "for general revenue purposes." See Oil City v. Oil City Trust Co., 151 Pa. 454.

The only difference between section 2601 of the Act of June 23, 1931, P. L. 932, known as "The Third Class City Law," and the ninth section of the Act of May 27, 1919, P. L. 310, is that the Act of 1931 contains the following words: "all skating rinks, operas, theatres, shows, circuses, menageries, and all kinds of public exhibitions for pay, except those for religious, educational or charitable purposes;" which were not contained in the Act of 1919. If that is the only difference, it follows that any decision of the Supreme or Superior Court which would rule the present question if the Act of 1931 had not been passed, must rule this case. The learned counsel for the petitioner contend that such a case is Cupp Grocery Co. v. Johnstown, 288 Pa. 43. That case is a per curiam opinion affirming the judgment of the Superior Court on its opinion reported in 88 Pa. Superior Ct. 602. No doubt the syllabi of that case were prepared by the judges of the several courts. In the Superior Court case the syllabus is: "An ordinance passed by a city of the third class under authority of the Act of June 27, 1913, P. L. 568, as amended by the act of May 27, 1919, P. L. 310, providing for the levy of a license tax on 'all persons, firms and corporations engaged in any trade, business,' etc., and making the amount of the tax dependent upon the volume of business done, is a tax on the business designated, and not on the place of business, and a person or firm operating a number of grocery stores in the same city is not taxable on each separate store.

"The power to impose a tax is given by statute and an act relating thereto embraces such subjects only as are plainly within its terms. A tax law cannot be extended by construction to things not described as the subject of taxation." In the Supreme Court the syllabus of the case is: "Where a corporation conducts a retail grocery business in many distinct establishments in a third-class city, such city cannot, under the Acts of June 27, 1913, P. L. 568, and May 27, 1919, P. L. 310, provide by ordinance for the levy and collection of a mercantile license tax upon the business transacted at each separate place of business.

"In such case the tax must be based on the aggregate amount of business done annually regardless of the number of stores operated."

It would seem to us that it would be sufficient to end this opinion with what we have already written because the ordinances in that case and the present case are practically the same excepting that the amended ordinance in this case introduces two new subjects, to wit, department stores and chain stores. Neither of these subjects is referred to in the statutes, and it is impossible to give validity to an ordinance which depends only upon its own terms. As was said above, the power to impose a tax on the subject itself must be found in the statutes,

and statutes cannot be extended by construction to things not described as subjects of taxation. The learned counsel for the City of Easton attempts to distinguish the Cupp case because the ordinance in that case did not specifically mention chain stores. Judge Cunningham did say that the question of whether or not the city could pass such an ordinance "is not involved on this appeal and we express no opinion upon it;" but as the context plainly shows, he was speaking on the question as to whether the City of Johnstown had a right to pass such an ordinance under the police power. Upon this argument the learned city solicitor expressly stated that he would make no such contention. Little light is thrown upon the decision of the present case by the decision of the Supreme Court of the United States in State Board of Tax Commissioners of Indiana v. Jackson, 283 U. S. 527. In that case the statute of the State of Indiana provided:

"The license fees herein prescribed shall be as follows: (1) Upon one store, the annual license fee shall be three dollars for each such store;

"(2) Upon two stores or more, but not to exceed five stores, the annual license fee shall be ten dollars for each such additional store;

"(3) Upon each store in excess of five, but not to exceed ten, the annual license fee shall be fifteen dollars for each such additional store;

"(4) Upon each store in excess of ten, but not to exceed twenty, the annual license fee shall be twenty dollars for each such additional store;

"(5) Upon each store in excess of twenty, the annual license fee shall be twenty-five dollars for each such additional store." The seventh paragraph of the syllabus of the case is: "An Indiana statute lays an annual license tax on stores, increasing progressively with the number of stores under the same general management, supervision or ownership—such that, in the present case, the owner of a 'chain' of some 225 stores selling groceries, fresh vegetables and meats, was obliged to pay $5443.00, whereas the owner of a single store only, though it involved a much greater investment and income, would pay but $3.00. Held, not violative of the equal protection clause, in view of the distinctions and advantages which combine and are exerted in a single ownership and management of a series of like stores in different locations, as compared with mere coöperative associations of independent stores, or with department stores selling many kinds of goods under the same roof." The same doctrine was laid down in Southern Grocery Stores, Inc., et al. v. South Carolina Tax Commission et al., 55 F. (2d) 931. The Pennsylvania cases cited do not in any way help his contention. In In re Appeal of Atlantic Refining Company from Payment of Mercantile Tax, 35 Montg. Co. L. Repr. 203, the syllabus is: "The appellant, a Corporation with a factory located in Philadelphia, has ten distinct places to which goods are shipped, and from which deliveries are made. These stations according to the Company, are designated as sub-stations, relay stations and warehouse stations. The facts established show that the appellant sold goods at the place at which these stations were established, providing the driver happened to be there when a customer arrived. While the stations were designated differently by the Company, yet they were all used in the same manner, and under the Act of 1899 were subject to the mercantile tax." The opinion was handed down on December 31, 1918, by Judge Miller. On February 3, 1923, President Judge Endlich decided Cassel's Appeal, 15 Berks Co. L. J. 163. The syllabus of that case is as follows: "Under an ordinance of a city of the third class levying a license tax for general revenue purposes on all grocers doing business in the city, and classifying grocers on the basis of gross volume of business transacted, a grocer who operates 18 separate grocery stores in the city is liable to the payment of a tax with respect to each store separately."

454

From the opinion it appears that "The Council of the city of Reading, on April 14, 1920, passed an ordinance which provides, in sec. 1, clause 1, as follows: . . .

" '(a) Those whose gross volume of business transacted annually . . . exceeds $75,000, shall constitute the first class and shall pay one hundred dollars.

" '(b) Those whose gross volume of business is over $50,000 and does not exceed $75,000, shall constitute the second class and shall pay seventy-five dollars.'

"It then goes on to classify downwards with a progressively diminishing tax, to the ninth class doing a business not exceeding $1,000, which shall pay one dollar." The opinion of Judge Endlich shows that he was influenced by the opinion of Judge Miller above, which was an appeal from payment of a mercantile tax. In the Cupp Grocery Company case, supra, Judge Cunningham approves the language of the lower court, distinguishing cases under the mercantile tax law as follows: "Counsel for the defendant relies for support of his contention upon the cases of Atlantic Refining Co. v. Van Valkenburg, 265 Pa. 456; Commonwealth v. Thomas Potter, Sons & Co., 159 Pa. 583; Commonwealth v. Abbotts Alderney Dairies, 62 Pa. Superior Ct. 451; Commonwealth v. American Tobacco Co., 173 Pa. 531, all of which cases arise out of the mercantile tax law. This law, however, is not one that may be used for comparison with the ordinance of the City of Johnstown for the reason that an examination of the statutes relating to mercantile taxes will disclose the fact that these statutes require the persons doing business to take out a license for each and every store." While we hesitate in differing from as learned a judge as Judge Endlich, we are of opinion that his decision was not correct in Cassel's Appeal, supra. A case which contains the true view is Chester City v. Bostwick, 21 Del. Co. R. 296, 16 D. & C. 29, where President Judge Fronefield decided that a city could not impose a tax on a business that was not referred to in the statute. The syllabus of that case is: "A city of the third class must show specific statutory authority to sustain an ordinance imposing a license tax on a business.

"Such statute cannot be extended to a business not described in it. A city of the third class has no authority to levy and collect a license tax on the business of hauling and moving." Com. v. Bushnell, 18 Dauph. Co. Reps. 287, throws no light on the present question, and it does not refer as a matter of fact to the payment of license tax by a market company as an exoneration of those who rented stalls in the market house. Counsel evidently confused the facts of that case with another one which we have not been able to find. The principle that the power to impose a tax must be given by statute, and that an act relating thereto embraces such subjects only as are plainly within its terms, is equally applicable to ordinances of a municipality. The general subject of classification by cities of the third class to raise money for general revenue purposes is discussed in City of Williamsport v. Wenner, 172 Pa. 173, Clouser et al. v. Reading City et al., 270 Pa. 92, and Com. v. Pennsylvania Water & Power Co., 271 Pa. 456, and such power is undoubted.

In conclusion, we fail to understand the force of the argument that the only equitable method of taxation is to tax each unit of a chain store over $50 per year. There being fourteen stores involved in this case, the total tax would be $700. The total business done was $300,000. That is to say, each store would average $21,428, and would come within the classification mentioned in the ordinance, $20,000 sales and not exceeding $30,000, $10 per year, which would make the annual tax $140, if it were equitably assessed under the terms of the ordinance. The petitioner must pay, under the ordinance, $100 per year, and it is willing to do so. The ordinance is founded on the act of assembly which limits

the maximum to $100 a year. Even prorating it, it would be inequitable as it would be in excess of that sum by $40. Another view is that under the ordinance, as amended, an attempt might be made to collect $100 per year on the $300,000 of sales, and in addition, $700 on the fourteen units, that is on each store. While double taxation is permissible in some cases, the purposes of the tax must be separate and distinct. Where the purpose would be the same as in the last case, it is double taxation as that defined by Mr. Justice Schaffer in Com. v. Harrisburg Light & Power Co., 284 Pa. 175, as follows: "It would be double taxation where one was additionally levied on the same property for the same purpose." These considerations, however, are perhaps unnecessary. In our judgment, the case is ruled by the Cupp Grocery Company case, supra.

And now, June 6, 1932, the court orders and declares that the ordinance in the petition designated as Exhibit A, class 1B, has no validity, with respect to the American Stores Company, the petitioner, and orders and decrees that under the ordinances, exhibit A and exhibit B, the only sum required to be paid by the American Stores Company to the City of Easton for the year 1932 is the sum of $100.

From Henry D. Maxwell, Easton, Pa.