## Kinderman v. City of Philadelphia et al.

*Sundheim, Folz & Sundheim,* for plaintiff.

*David J. Smyth,* city solicitor, and *G. Coe Farrier* and *Samuel Feldman,* assistant city solicitors, for defendants.

ALESSANDRONI, J., May 22, 1933.—The plaintiff, on October 14, 1932, leased a store and basement at Nos. 4661-63 Frankford Avenue, Philadelphia, for the term of 1 month from the 25th day of October, 1932, at a monthly rental of $250,

the lease containing the provision that it should continue from month to month until terminated by either party giving 3 days' notice prior to the termination of the current month. The plaintiff installed furnishings and fixtures of a temporary nature in the premises and engaged in the business of selling toys, baby carriages, etc., at retail with the intention to occupy the premises and conduct the business only for the Christmas season, and then remove at the expiration of the monthly term in December 1932 or January 1933.

The legislature of the Commonwealth of Pennsylvania, by the Act of May 24, 1923, P.L. 442, as amended by the Act of May 13, 1925, P.L. 642, empowered cities, boroughs and townships to issue licenses to transient retail merchants at not less than $25 per month nor more than $200 per month, and provided for penalties of not less than $100 nor more than $200 or imprisonment for a period not exceeding 30 days in the event that any transient retail merchant should not obtain such license.

The City of Philadelphia by ordinance No. 234, of May 26, 1927, provided for the licensing of those engaging in the retail business at $200 per month or fractional part thereof, and provided for a fine of $200 for failure to procure a license before entering into such business or imprisonment not exceeding 30 days. By the Act of June 12, 1931, P.L. 535, the prior acts of the Pennsylvania legislature were repealed but their provisions were substantially reënacted.

The plaintiff failed to obtain a license in accordance with the provisions of the ordinance and was arrested and fined $200 by a magistrate of the City of Philadelphia. This bill was filed to enjoin the imposition of the fine and the enforcement of the ordinance.

The learned chancellor found the ordinance unconstitutional and granted an injunction against the magistrate restraining the imposition of the fine. The exceptions filed raise the question of the propriety of the chancellor's findings of fact and law and of the decree. The reasons underlying the chancellor's adjudication are that the term "transient" is not defined and is too indefinite in its meaning to be enforceable; that the ordinance is an exercise of the police power and as the license fee greatly exceeds the cost of enforcing it, it is unreasonable and void; and that even if construed as a tax for revenue purposes it is void for lack of uniformity and improper classification.

In order to determine the propriety of these conclusions certain fundamental principles of construction must be borne in mind. The acts of the legislature are presumed to be constitutional and will not be declared unconstitutional unless their unconstitutionality is proven beyond all doubt. Thus, in Gottschall v. Campbell, 234 Pa. 347, 363, it was said:

"That one who asks to have a law declared unconstitutional takes upon himself the burden of proving beyond all doubt that it is so, has been so often declared that the principle has become axiomatic. In Sharpless v. Mayor of Philada., 21 Pa. 147, Mr. Justice Black said (p. 164): 'There is another rule which must govern us in cases like this; namely, that we can declare an act of assembly void, only when it violates the constitution clearly, palpably, plainly; and in such manner as to leave no doubt or hesitation on our minds. This principle is asserted by judges of every grade, both in the federal and in the state courts.' "

The burden, therefore, rests upon the plaintiff to establish the unconstitutionality of the statute and the ordinance thereunder beyond all doubt. It is also firmly established that the legislative tax power may be delegated to a municipality, which may classify the parties or things taxed. There is no limitation of this power in the Constitution of Pennsylvania: Durach's Appeal, 62 Pa. 491; Butler's Appeal, 73 Pa. 448; 61 C.J. 83; 44 C.J. 1270. Further-

more, our courts have consistently held that legislation will not be considered invalid for uncertainty, if susceptible of any reasonable construction that will give it effect: Miller v. Belmont Packing & Rubber Co., 268 Pa. 51; 59 C.J. 601, et seq.

With these principles in mind, our first inquiry must be directed to the question of the character of the license fee imposed. The ordinance provides for a license fee of $200 per month. If this license fee is imposed under the police power delegated to the municipality, it is clearly invalid, for the license fee chargeable under an exercise of the police power must not exceed the cost of regulation. It is obvious that the fee of $200 per month is greatly in excess of any cost of police supervision or regulation and the ordinance cannot be supported if intended for that purpose: Arronson et al. v. City of Philadelphia et al., 16 D. & C. 427. The pertinent inquiry, therefore, is whether the statutes and ordinances involved were intended as an exercise of the police power or as a tax for revenue purposes.

The Act of May 24, 1923, P.L. 442, as amended by the Act of May 13, 1925, P.L. 642, was entitled "An act to provide for the licensing of transient retail merchants," and specifically provided for license fees of not less than $25 per month nor more than $200 per month, and then for penalties for violation thereof of not less than $100 nor more than $200, or 30 days' imprisonment if the fine was not paid. This statute, therefore, has no reference to any phase of the police power and cannot be in any manner construed as regulatory. It merely provided for a tax by means of a license fee, and the ordinance of 1927 passed pursuant thereto is not regulatory and merely provides for the imposition of a license fee of $200 per month on all transient retail merchants. Its basic provisions follow those of the act authorizing the fee in detail, even to the extent of the exceptions stated in the act. Moreover, the size of the fee provided in the act and the ordinance indicates that it is intended for revenue purposes and not for regulation.

The Act of June 12, 1931, P.L. 535, changes the earlier statute by authorizing cities, towns and townships of the first class to regulate and license. Although this statute expressly repealed the earlier one, by its terms it substantially reënacted the provisions of the earlier act and, therefore, rendered the ordinance of 1927 valid, even though the statute upon which it was based had been repealed. As stated in 43 C.J. 567:

"But a change made in the organic law under which cities of a designated class are organized does not repeal existing ordinances while the power to pass the same ordinances continues to exist, and an ordinance remains in force after adoption of a new charter, authorizing such an ordinance and providing that existing ordinances shall remain in force until repealed. It has also been held that a statute repealing an enactment giving certain powers to a city does not repeal ordinances passed by it in pursuance of such action except in so far as they are in conflict with the provisions of the repealing statute; and this principle applies with peculiar force to a statute which repeals and substantially reënacts the previous law under which the ordinances have been passed. And, although a statute repeals the statute under which an ordinance was passed and enacts a substitute therefor, the ordinance is not affected if in harmony with the new provision."

The only change made in the Act of 1931 was to authorize regulation as well as licensing, but as the fees provided are the same, it must be assumed that the license fee was for revenue purposes, and it is clear that the purpose of the ordinance has not been changed.

Every guiding principle of construction indicates that this ordinance was

intended as a valid exercise of the taxing power and not of the police power. If the license fee charged is large, as in the matter now before us, this is taken to be an indication that it is a tax for revenue purposes. As stated in 17 R.C.L. 544:

"The amount of the license fee or charge is to be considered in determining whether the exaction is one for regulation merely, or for revenue, the reason being that the amount of the fee might in some cases be so large as to suggest of itself, considering the character of the business to which it was applied, that it was in fact a tax for revenue."

It is also customary to make the payment of license and occupation taxes enforceable by fine and imprisonment, even though the license is for revenue purposes: 17 R.C.L. 558. The license tax imposed under the ordinance is in reality a mercantile tax on transient retail merchants for the privilege of carrying on their business. The mercantile tax imposed by the State of Pennsylvania has from an early date been construed as being applicable only to dealers having a permanent place of business: See opinion of Attorney General Elkin, In re New Mercantile Tax Law, 9 Dist.R. 117; approved, In re Mercantile License Tax of Pittsburgh Coal Company, 77 Pa. Superior Ct. 93, 97. It would, therefore, appear that as the mercantile tax imposed by the State would not apply to transient retail merchants, the purpose of the legislature was to delegate the power to enforce such a tax to the governmental agencies in a better position to enforce the payment of such a tax.

As pointed out by the learned chancellor in his adjudication, where an ordinance is open to more than one construction, it is the duty of the court to give it that construction which will make it constitutional. In Cooley on Taxation (4th ed.), ch. 1, sec. 27, it is stated that "a charge of a fixed sum which bears no relation to the cost of inspection and which is payable into the general revenue of the state is a tax rather than an exercise of the police power." The ordinance provides for payment to the city treasurer who, of course, is the general revenue collector of the city. A fair and impartial reading of the ordinance and the statute authorizing it indicates clearly that its sole purpose was revenue, for no other provision is contained therein. Not one word of regulation is included, and the ordinance itself merely provides for the imposition of a high tax on transient retail merchants without any semblance of regulation or exercise of the police power. The purpose of the ordinance and the statute, therefore, was to remedy the inadequacy of the existing law, as the mercantile license tax imposed by the State of Pennsylvania did not and does not include transient retail merchants. The legislation, therefore, was intended to impose a tax upon this hitherto exempt business.

Moreover, transient merchants enter into business usually at seasonal periods of the year when business is good. Being tax free and not compelled to engage in business during the slow periods of the year, they are in a position to undersell the permanent merchants and reap large profits. Engaging in business for only a short period of time when the season guarantees large sales and favorable conditions, they are well able to afford a tax such as the one here imposed, and the unfair advantage which their type of business affords them over the permanent merchants is minimized by virtue of the legislation involved in the matter now before us. Bearing in mind, therefore, all these reasons, as well as the principles of construction that legislation must be construed in such a way as to render it constitutional and valid, and that it is presumed to be a proper exercise of legislative power, we conclude that the empowering statute and the ordinance thereunder were designed for revenue purposes and not for the exer-

cise of police power. The Act of 1931 reënacted the privileges of the earlier act and in addition gave to municipalities the power of regulation, which has not been exercised, and, therefore, has no bearing on the issue now before us.

License fees have often been imposed for revenue purposes. In Oil City v. Oil City Trust Co., 151 Pa. 454, a license fee on the occupation of banking was held to be for revenue purposes. In State of Vermont v. Harrington, 68 Vt. 622, 628, the court stated:

"Judge Cooley remarked in *Youngblood* v. *Sexton*, 32 Mich. 406, that while a statute might have revenue for one object, the exercise of the police power of the state might be another. So if this law were to be considered as a mere revenue law it must be in the light of the settled rule, as laid down by all writers upon taxation, that everything to which the legislative power extends may be the subject of taxation, whether it be person, property, franchise, privilege, occupation or right; that not only is the power unlimited in its reach as to subjects, but in its very nature it acknowledges no limits, and may be carried to any extent which the government may find expedient. It may therefore be employed again and again upon the same subjects, even to the extent of exhaustion and destruction, and thus become in its exercise a power to destroy. Cooley on Taxation, 384, and cases cited in notes; *Nathan* v. *Louisiana*, 8 How. 73, License Tax Cases, *supra* [5 Wall. 462]; *Union Pac. R.R. Co.* v. *Peniston*, 18 Wall. 5; *New Orleans* v. *Telephone Co.*, 8 Am. St. R. [502,] 508."

In Altoona City v. O'Leary, 60 Pa. Superior Ct. 159, cities of the third class were empowered to impose a license fee not exceeding $100 annually on certain businesses. The ordinance of the City of Altoona imposed such a license fee and is in many respects similar to that of the ordinance now before us. In holding it to be a tax for revenue purposes the court stated (p. 162):

"The occupations mentioned in the act are, in large measure at least purely private, or the purely private business of the citizens. They in no way are related to or affect the general welfare of the community, the public health, safety or morals. . . .

"That the ordinance in question was enacted to exercise the power of taxation and not the police power of the city is clear. It follows the language of the statute. It does not require the appellant to procure a license before it may lawfully carry on its business. It provides for no inspection, regulation or control of such business. In the language of Rice, P.J., in Titusville v. Gahan, 34 Pa. Superior Ct. 624, 'There is nothing in the body of the ordinance to indicate that it was adopted for any other purpose or in the exercise of any other power than the power of taxation, or to raise a presumption that the amount of the fee or tax was fixed with any regard to those matters that it was the duty of the corporate authorities to consider in the imposition of such a charge in the exercise of the police power.'" See, also, Harrisburg v. Smith Premier Typewriter Co., 30 Dist.R. 7.

The learned chancellor, however, held that even considering the ordinance as a tax for revenue purposes, it is invalid as being an improper classification. The principles to be applied in deciding whether classification under a statute is proper are fully stated in Com. v. Grossman, 248 Pa. 11, 15, as follows:

"We have sustained classification as the proper exercise of legislative power, and held that it is a legislative question with which the courts will not interfere, if made in good faith and based on genuine and substantial distinctions of the subjects classified. What business or occupation so far affects the public welfare and good order as to require to be licensed is a matter of legislative consideration and control which when exercised in good faith is outside of the jurisdiction of the courts: Oil City v. Oil City Trust Co., 151 Pa. 454. In Sea-

bolt v. Commissioners of Northumberland County, 187 Pa. 318, we said in reversing the court below and sustaining such legislation (p. 323) : 'Legislation for a class distinguished from a general subject is not special but general, and classification is a legislative question, subject to judicial revision only so far as to see that it is founded on real distinctions in the subjects classified, and not on artificial or irrelevant ones used for the purpose of evading the constitutional prohibition. If the distinctions are genuine the courts cannot declare the classification void, though they may not consider it to be on a sound basis. The test is, not wisdom, but good faith in the classification.' "

In Com. v. Puder, 261 Pa. 129, the same principles were enunciated and an act regulating small loans was held to be a proper basis of classification. See, also, Seabolt et al. v. The Commissioners of Northumberland County, 187 Pa. 318. In Com. v. Brinton, 132 Pa. 69, an act prohibited peddling except by citizens selling their own goods and was held to be a proper basis for classification and the principle was firmly enunciated that a court could not interfere with a classification made by the legislature unless no basis of distinction appeared. The legislature was held to be the sole judge of the expediency and necessity of the statute. Also see Graeff v. Schlottman et al., 287 Pa. 342, wherein a classification by counties was held to be proper. In Com. v. Girard Life Ins. Co., 305 Pa. 558, the Supreme Court recently carried these principles even further than applied in the matter now before us and the cases previously cited. A classification of life insurance companies providing for a tax on the gross premiums of insurance companies and excepting mutual life insurance companies, was held to be a proper classification. The court in commenting upon this distinction stated that the classification apparently was unfair, but held that it could not consider the question of whether the act was equitable and just or the fact that the legislature had repealed the act. On the authority of this case alone, it is obvious that the classification made in the statute and ordinance now before us is clearly proper.

Furthermore, a real distinction appears between transient retail merchants and those of a permanent nature. The latter are compelled to pay a tax all year round and to bear the brunt of adverse business conditions, as well as favorable conditions induced by a seasonal impetus. Transient merchants do not usually make large investments and are not subject to the fixed charges and overhead of those of a permanent nature and, being engaged in the business for a comparatively short period of time, are not required to maintain the high standard of quality and integrity demanded of those in permanent occupations. Under these circumstances, the transient merchant has a distinct advantage over the permanent merchant, and the factors differentiating the two classes obviously form a proper basis of classification. The learned chancellor based his conclusions in part upon the theory that the only distinction between transient and permanent merchants is one of time, but an analysis of the distinction between the class of business done by the respective merchants, the manner in which it is done and the character thereof indicates that the distinction is of much deeper significance than that of mere duration of time. The cases heretofore cited clearly support that conclusion. In fact, in Clouser et al. v. Reading City et al., 270 Pa. 92, a statute authorized cities of the third class to levy and collect a license tax for revenue purposes not exceeding $100 annually on certain businesses. The classification was held proper even though no similar provision was made in cities other than those of the third class. In State of Vermont v. Harrington, 68 Vt. 622, an act requiring itinerant vendors to deposit $500 with the State Treasurer and to take out a state license and also a local license was held to be constitutional and proper classification. It is there stated:

"Desty on Taxation, 1383, says: 'Municipal corporations may tax a business or occupation of one class and omit to tax that of another class; and may classify merchants, and tax each class in its discretion; but a tax on any occupation must reach all who follow it, all of a class of persons or things.' "

The learned chancellor also held that inasmuch as the tax is the same on all transient merchants regardless of the size of the business and the amount of business done, it is void for lack of uniformity. This precise question was passed upon by the Supreme Court in Altoona City v. O'Leary, 60 Pa. Superior Ct. 159. The legislature conferred authority upon cities of the third class to collect a license tax not exceeding $100 per year on certain classes of occupation. The City of Altoona thereupon passed an ordinance imposing a tax of $100 annually on gas companies or individuals furnishing light or heat. The tax was held to be for revenue purposes and in this respect is similar to that now before us. In addition, the court held that although the tax was levied without regard to the quantity of the business done by each company, it was not a violation of the provision of the Constitution requiring uniformity of taxes. Also see Clouser et al. v. Reading City et al., supra. In The City of Ottumwa v. Zekind, 95 Iowa 622, an ordinance imposing a license fee of $250 a month was held not to violate the provision requiring uniformity and proper classification. We, therefore, conclude that the classification made by the legislature and the city council was proper.

The remaining conclusion of the learned chancellor is that the word "transient", not being defined in the statute or in the ordinance, is so indefinite in meaning as to be incapable of enforcement. The word "transient" has been defined in Webster's New International Dictionary (1928) as follows: "Staying for a short time; not regular or permanent; as, a *transient* guest; *transient* boarders." The generally accepted meaning of transient, as indicated in the above definition, is that of something of a temporary nature as distinguished from that of a permanent nature. Viewing it in this light the meaning appears clear, and especially as applied to the facts in this case. The plaintiff entered into the toy business in the latter part of October for the avowed purpose of remaining in the business only for the Christmas season. The fixtures in the store were of a temporary nature. These facts constitute part of the uncontested findings of the learned chancellor. There can be no doubt that the plaintiff's business was temporary in nature and clearly within the definition heretofore given and as commonly understood in everyday life. Questions of interpretation constantly arise in the law as to the meaning of words, and where they have a commonly accepted meaning or are capable of definition, that meaning is applied to them. We, therefore, find that the word "transient" is not so indefinite in its meaning as to render the ordinance unenforceable.

In fact, courts of this State have previously been confronted with similar legislation and have interpreted the word "transient" as having a definite connotation, implying an occupation or business of a temporary character. In Com. v. Townley, 7 Dist.R. 413, the defendant was indicted for opening a transient office without a license. The court interpreted the word "transient" as being of a temporary nature, and the act imposing the penalty was not impeached. In Moore v. Bradford County, 148 Pa. 342, the meaning of the word "transient" as applied to physicians or surgeons in an act was not questioned. The same is true in other jurisdictions. See Town of Scranton v. Henson et al., 151 Iowa 221, wherein the term "transient merchant" was held to refer to the character of the business and not the residence of the merchant. The court stated that in determining whether a merchant is of the transient class the kind of business, the place where conducted and the duration of the business are

all factors to be considered. The same interpretation was placed upon the word as applied to transient merchants in The City of Ottumwa v. Zekind, supra. See, also, Yates v. Iams, 10 Tex. 168.

For the above reasons, we find the act and the ordinance constitutional and sustain the exceptions to the adjudication.

### Final decree

And now, to wit, May 22, 1933, it is ordered, adjudged and decreed that the bill of complaint be dismissed, at the cost of the plaintiff, and the exceptions are sustained.

LAMBERTON, J., dissenting.